[No. 48441–4. En Banc. July 14, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES LATHAM, *Petitioner.*

*Henry W. Grenley* (of *Mullavey, Prout, Grenley & Sonkin*), for petitioner.

*E. R. Whitmore, Jr., Prosecuting Attorney,* and *Jeffrey C. Barker, Deputy,* for respondent.

CUNNINGHAM, J.*—Petitioner, James Scott Latham, seeks review of a Court of Appeals decision affirming his conviction for first degree arson. *State v. Latham,* 30 Wn. App. 776, 638 P.2d 592 (1981). For the reasons discussed below, we affirm.

Petitioner's conviction stems from a fire at his home in Wenatchee, Washington. In August 1979 petitioner was residing, with his wife and small son, in a single–family dwelling owned by his wife, Luenna. On August 6, 1979, petitioner's home was severely damaged by fire. According to the petitioner, he arrived home at approximately 7 a.m. on the day of the fire, after working the night before as a night stocker in a grocery store. During the course of the morning, petitioner quarreled with his wife and threatened to burn the house down. Petitioner alleges, however, that this threat was made only to hurt his wife's feelings rather than as an expression of his actual intent. Following the argument, Luenna left to visit her mother. Petitioner, in an attempt to soothe his child's distress over the argument, took the boy to the store for some toys and candy. While there, petitioner purchased a bottle of over–the–counter sleep medication (Nytol) and a half case of beer. Petitioner consumed six Nytols and several beers while playing with his son, and fell asleep. Later that afternoon, he was awakened by his son's screams. At this time petitioner discovered the house was on fire. He testified that he made his way outside and found his son at a neighbor's. Petitioner

---

*Judge D. J. Cunningham is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amend. 38).

was arrested, charged and tried on one charge of first degree arson in violation of RCW 9A.48.020.

One month before trial, the petitioner moved, in limine, to exclude certain evidence. Specifically, the petitioner sought an order preventing the State from introducing evidence of the petitioner's prior conviction. The motion was denied. Just before jury selection, the judge indicated that he had changed his mind and would grant the motion. The conviction in question occurred in 1976 and involved the delivery of LSD.

During voir dire, relying on the above ruling, Latham did not ask the prospective jurors about prejudices they might have had concerning the illegal use of drugs. In response to other questions, however, some jurors indicated strong beliefs concerning the use of alcohol. See Report of Proceedings, at 79 (Dorothea Holt, not challenged) and 93 (Eva Stutzman, excused on the court's motion). Voir dire also revealed that several members of the jury panel had experience or had relatives who had experience in fire fighting. Prospective juror Keith Wright, for instance, was a volunteer fire fighter. Upon learning this, Latham challenged Wright for cause. The court asked Wright, who had some knowledge of arson investigations, whether he could put aside his training and listen to the evidence. When Wright replied that he could and would, Latham's challenge was denied. Latham later used a peremptory challenge to remove Wright. Prospective juror Jimmie Flagel had been a fire fighter for 5 years. His experience also included training regarding arson. Latham challenged Flagel for cause, but this challenge too was denied. Latham used an additional peremptory challenge to remove Flagel.

A total of 10 peremptory challenges were exercised, of which the defense exercised 6. After voir dire was completed, the trial court put its ruling concerning the motion in limine on the record. The court indicated it would not permit the State to introduce evidence of Latham's prior conviction, because it believed the sentence had been deferred. The State informed the court that the sentence

had not been deferred and urged the court to reconsider its ruling. The court replied that it would do so.

On the morning of the second day of trial, the court notified the parties that it had again considered Latham's motion in limine. The judge reversed his earlier ruling and stated that he would permit the State to introduce, for impeachment purposes, evidence of Latham's prior conviction. Latham immediately moved for a mistrial. He argued that the timing of the court's ruling denied him the right to question jurors about drug use bias. In addition, he alleged that he was denied the right to challenge jurors for cause based upon actual biases regarding drug use. Latham also urged that he had lost the opportunity to intelligently exercise his peremptory challenges. The motion for mistrial was denied.

Petitioner was convicted of arson in the first degree. He appealed to Division Three of the Court of Appeals, alleging trial error in the empaneling of jurors. He also assigned error to the judge's admission of his prior conviction and the failure to grant a mistrial. The Court of Appeals rejected petitioner's arguments, noting the trial judge had properly explored the jurors' possible prejudice. As to his second contention, the Court of Appeals found that the conviction was admissible but that the trial court had erred by reversing its ruling after jury selection. The court determined, however, that the petitioner had failed to demonstrate prejudice. Latham's motion for reconsideration was denied and he petitioned for review, which was granted.

We agree that the petitioner has failed to demonstrate prejudice or a trial irregularity which significantly infringed on his right to a fair trial. We therefore affirm the decision below.

### JURY SELECTION

The Sixth Amendment insures that criminal defendants shall "enjoy the right to a speedy and public trial, by an impartial jury". This right has been characterized as the right to a fair trial by a panel of impartial, indifferent

jurors. *Irvin v. Dowd*, 366 U.S. 717, 722, 6 L. Ed. 2d 751, 81 S. Ct. 1639 (1961). Article 1, section 22 of our state constitution contains language similar to that of the Sixth Amendment. In addition, the right to a fair and impartial jury is protected by the procedures contained in RCW 4.44 and by court rule. These protections include the right to have a juror excused if the trial judge is of the opinion that grounds for challenge are present. CrR 6.4(c)(1). A challenge for cause may be made for either implied or actual bias. RCW 4.44.170. Actual bias is defined as the existence of a state of mind which satisfies the judge that the juror "cannot try the issue impartially and without prejudice to the substantial rights of the party challenging". RCW 4.44-.170(2). Implied bias, on the other hand, arises when a juror has some relationship with either party; with the case itself; or has served as a juror in the same or a related action. RCW 4.44.180.

Latham challenged two jurors, Wright and Flagel, for cause. As noted above, both individuals were firemen. Juror Wright had spent some time in class with one of the State's witnesses. The Wright challenge was denied when Wright indicated that he could and would evaluate the case fairly.

The second challenge for cause was against Jimmie Flagel. Flagel, like Wright, was acquainted with one of the State's witnesses, but when questioned, he also promised to fairly and impartially evaluate the case. Petitioner's challenge of Flagel was denied. Ultimately, these jurors were excused pursuant to the petitioner's use of his peremptory challenges.

In addition, petitioner challenged for cause several jurors who either had relatives who were fire fighters or had feelings about alcohol. Some of these were excused pursuant to petitioner's exercise of his peremptories; others remained on the panel. Petitioner now argues that the denial of his challenges to Wright and Flagel was erroneous and forced him to use peremptory challenges that he could have used better on other jurors. We disagree. Latham has failed to show that the two jurors should have been excused

for bias. Petitioner's argument assumes that he was entitled to a jury which was totally ignorant of the subject matter of the case and the witnesses. This standard was rejected in *Irvin v. Dowd, supra.* There the Court noted:

> It is not required, however, that the jurors be totally ignorant of the facts and issues involved. . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin,* at 722–23. Here, both challenged jurors agreed to lay aside their opinions. Also, neither had specific knowledge about the crime with which Latham was charged nor did either have opinions concerning Latham's case. Each promised to base his verdict solely on the evidence presented at trial. Thus, the Court of Appeals properly concluded that petitioner's challenges were not erroneously denied.

Finally, we note the use of a peremptory challenge to remove a juror who should have been removed for cause "cures" the error. *See United States v. Tweed,* 503 F.2d 1127 (7th Cir. 1974); *State v. Dixon,* 5 Or. App. 113, 481 P.2d 629 (1971), *cert. denied,* 404 U.S. 1024 (1972). Where, as here, the juror is excused through a peremptory challenge, the defendant must show that the use of the peremptory challenge actually prejudiced his case. *United States v. Tweed, supra; see also State v. Robinson,* 75 Wn.2d 230, 450 P.2d 180 (1969). Petitioner contends, however, that because he was forced to use two peremptory challenges on these jurors, he was prejudiced. He argues the use of these challenges denied him the opportunity to exclude any jurors who may have had strong opinions about drug use. Because we hold the trial court did not err by refusing petitioner's challenges for cause, we need not address this issue.

## Mistrial

Petitioner next assigns error to the trial judge's failure to grant his motion for a mistrial. As related above, this issue arises from the trial judge's belated reversal of his ruling

concerning the admissibility of petitioner's prior conviction.

Petitioner argues that he was denied the opportunity to examine prospective jurors adequately because the trial judge reversed his ruling subsequent to voir dire. He concludes that this affected the exercise of his peremptory challenges. He also argues further voir dire may have resulted in some jurors being excused for cause. The State rejects these arguments by urging motions in limine are always tentative. It relies on *Jordan v. Berkey,* 26 Wn. App. 242, 611 P.2d 1382 (1980). In *Jordan,* the trial judge ruled, prior to trial, that evidence of the plaintiff's alcoholism would not be admissible in his action for personal injuries. During the trial, the judge reversed this ruling when the plaintiff's testimony concerning his injuries raised questions as to whether his alcoholism affected his physical condition. The Court of Appeals held no error was committed. The court stated:

> Although adherence to a pretrial order is generally helpful to the promotion of the orderly conduct of a trial, it must be remembered that the order is interlocutory in character and will be modified or abandoned according to the demands of justice.

*Jordan,* at 244. *Jordan,* however, is neither controlling nor persuasive in the present case. First, in *Jordan* the Court of Appeals decision based its holding in part upon the tentative language the trial judge used in granting defendant's motion. There, the trial judge stated that the evidence would be admitted if its relevance could be shown. Here, the trial judge initially, definitely, ruled that the conviction would not be admissible. Based on that ruling, the petitioner's trial counsel conducted voir dire accordingly, avoiding questions relevant to jurors' views concerning drug use.

The Court of Appeals held the trial court erred by reversing its ruling after voir dire. Although the Court of Appeals did not cite authority for this proposition, we agree a trial court's belated reversal of its final ruling on a motion in limine may constitute error where, as here, counsel can

identify a specific harm arising from the reversal. When a trial judge makes a clear nontentative ruling on such an issue, the defendant is entitled to rely upon that ruling.

On the other hand, not all errors of this nature require reversal of a conviction. Before a defendant is entitled to a reversal, he must demonstrate prejudice. *See State v. Cunningham,* 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). When a trial judge's ruling implicates either selection or management of the jury or trial, the reviewing court must determine whether the judge's decision affects the defendant's due process right to a fair trial. *See generally Smith v. Phillips,* 455 U.S. 209, 71 L. Ed. 2d 78, 102 S. Ct. 940 (1982). In *Smith,* the Supreme Court summarized its line of cases dealing with juror prejudice and then described the scope of due process as it pertains to potential juror prejudice.

> These cases demonstrate that due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith,* at 217.

We believe a similar analysis applies here. The proper inquiry, therefore, is whether the trial court's ruling denied the petitioner his right to a fair trial by an impartial jury. We conclude, under the limited facts of this case, that the petitioner's inability to question the jurors specifically on their views concerning drug use did not deny him a fair trial.

The petitioner has not demonstrated—even assuming that some of the jurors had strong feelings about the use of

drugs—that their opinions would have disqualified them from serving on the jury. RCW 4.44.170(2) provides that a juror will be excused

> For the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this code as actual bias.

This section requires that the court determine whether it believes the challenged juror can try the issue impartially. The record in this case clearly supports the conclusion that each of these jurors was able and willing to put aside personal beliefs. Each agreed to try the case on its merits. Also, despite the judge's ruling, defense counsel did question the jurors about certain types of drug use, *i.e.,* use of alcohol, over–the–counter drugs, and combination of drugs and alcohol. Given these facts, we cannot conclude that the procedures used to guard against juror prejudice were inadequate to insure the petitioner a fair trial. Also, we note the allegations of prejudice are purely speculative. Had the petitioner requested the court question jurors about drug use, the alleged biases could have been established at trial, rather than requiring us to speculate as to whether actual bias exists when reviewing the issue on appeal. Absent additional evidence, we will presume the jurors were impartial and that they obeyed their instructions to decide the case on the evidence presented.

Finally, our conclusion—that the petitioner received a fair trial—is bolstered by our review of the substantial evidence presented at his trial. We believe the evidence contained therein would necessarily have led to petitioner's conviction. At trial, the State produced several expert witnesses. Each testified they believed the fire had three separate points of origin. In addition, Mr. Tom Anderson, then assistant fire chief for the city of Wenatchee, testified that his men found a 1–gallon gas can in the house, near one of the three points of origin.

In response, defense called an expert witness who testified he believed the fire was caused by a defective electric plug on the refrigerator. The State rebutted this evidence, however, through expert testimony that established the fire could not have started behind the refrigerator, because the cord was melted by an external rather than an internal source.

Also, a neighbor heard a young boy, in the vicinity of the petitioner's house, cry over and over, "No, no, stop it; no, no, stop it", just before noting that the house was on fire. Report of Proceedings, at 133. This, in addition to the petitioner's threat to burn the house down earlier that day, as well as the State expert's testimony, clearly establishes his guilt.

In summary, petitioner was not denied a fair trial by the judge's action. We therefore affirm.

WILLIAMS, C.J., and STAFFORD, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., concur.

DORE, J. (dissenting)—Research indicates this is a case of first impression in this state. Logic dictates the case should be remanded for a new trial based upon the trial court's error in not granting the defendant's request for a mistrial.

The defendant's motion in limine was first argued February 9, 1980, at which time defendant moved to suppress the use of his prior conviction in 1976 for delivery of a controlled substance. The defense argued that the circumstances of the case were such that Latham would be compelled to testify to assert his innocence. The prosecution insisted that it be allowed to use the prior conviction to attack the defendant's credibility in the event he testified. The court ruled that ER 609 did not prevent the use of a prior conviction for impeachment of credibility, citing *State v. Murray*, 86 Wn.2d 165, 543 P.2d 332 (1975). Thus, the prior conviction would be admissible if the defendant took the stand.

The trial began on March 11, 1980. *Before* voir dire

began, the court informed counsel that the motion in limine had been re–researched and would be granted. When voir dire was concluded, defense counsel reminded the court that the new ruling was to be put on the record. The court stated the defendant had received a deferred sentence and eventually had his plea of guilty changed to not guilty and the information dismissed. Thus, the prior conviction would fall under ER 609(c) which prohibits the use of a prior conviction if the defendant has received a pardon, annulment or certificate of rehabilitation. Defense counsel had previously informed the court and the prosecution that defendant had received a final discharge restoring civil rights on February 28, 1978, but he had never received a deferred sentence.

On March 11, 1980, the court stated that the Latham case had been confused with some other case and reinstated its earlier ruling allowing the use of defendant's prior conviction. At that point, voir dire was completed. Defense counsel moved for a mistrial, due to the inability to question prospective jurors regarding the effect the admission of this prior conviction might have on their impartiality.

While this matter was on appeal, the Supreme Court issued its opinion in *State v. Alexis,* 95 Wn.2d 15, 621 P.2d 1269 (1980). This decision dealt exclusively with ER 609 and the admission of prior felony convictions.

In *Alexis* we held that when evidence of a prior conviction is offered to impeach a defendant who is testifying in his own defense, ER 609 requires the trial court to balance the importance of the jury's hearing the defendant's testimony against the importance of its knowing of the prior conviction as an aid in evaluating the defendant's credibility as a witness. Each case should be evaluated on its own facts, including the length of the defendant's criminal record, the remoteness of the prior conviction, the nature of the prior crime, the age of the defendant, the centrality of the credibility issue, and the impeachment value of the prior conviction.

The trial court in the subject case considered none of

these criteria when deciding the 1976 controlled substance conviction would be admitted to attack the defendant's credibility if the defendant testified. The trial court, citing *Murray,* essentially stated that any felony conviction was admissible to attack credibility.

This court discussed the dangers of admitting a prior unrelated conviction in *Alexis.* Quoting from *State v. Nass,* 76 Wn.2d 368, 371, 456 P.2d 347 (1969), we noted at page 18 of *Alexis:*

> It is obvious that evidence of former convictions is so prejudicial in its nature that its tendency to unduly influence the jury in its deliberations regarding the substantive offense outweighs any legitimate probative value it might have in establishing the probability that the defendant committed the crime charged.

In *Alexis,* at page 19, we also emphasized that "[i]n this case for example, unless the defendant testifies it is highly unlikely that his version of the matter will get before the jury". Defendant Latham was in exactly this predicament. He could decline to testify and have the jury wonder what his explanation was—especially when it is obvious that he was in the burning house—or he could testify and have the jury hear of his prior conviction regarding sale of drugs.

In changing its ruling *after* voir dire was completed, the court denied the defendant the opportunity to examine prospective jurors regarding what effect the defendant's prior conviction for sale of drugs would have on prospective jurors. Thus, the defense was handicapped in using its peremptory challenges as well as challenges for cause. *See* CrR 6.4, RCW 4.44.150–.250.

As stated in *Smith v. Kent,* 11 Wn. App. 439, 523 P.2d 446 (1974), the peremptory challenge is an important and substantial right which protects a party's constitutional right of trial by jury. Voir dire examination of prospective jurors is intended to enable a party to exercise this right; a party is entitled to rely upon sworn statements of prospective jurors during voir dire.

In the subject case, defense counsel was concerned about

the extreme reaction prospective jurors had to the mere mention of alcohol during voir dire. Pursuant to the court's ruling, defendant was informed that this same jury would be told of defendant's prior conviction for selling drugs when he testified.

The State, in arguing against the motion for a new trial, contended that the defense should have been aware that motions in limine are always tentative. I am not persuaded by this argument. The case cited by the majority, *Jordan v. Berkey,* 26 Wn. App. 242, 611 P.2d 1382 (1980), is not helpful. In *Jordan,* the defendant moved for an order in limine excluding, among other things, "'[t]he mention of alcohol or any activity related to the use of alcohol or an alcoholic beverage by the Plaintiff.'" The *Jordan* court granted the motion but stated, "'Well, if it's relevant it will come in, but now I don't see how it gets to be relevant'". *Jordan,* at 243, 244. There was mention of liability in *Jordan.* Later, however, the introduction of various medical records revealed that alcohol *was* relevant as to the proof of damages. The court then reversed itself, permitting testimony of alcoholism to be admitted. The Court of Appeals, affirming the trial court's reversal of holding on motion in limine, stated:

> At the time of the hearing on the motion in limine, the court had not been apprised of the nature of Jordan's multiple claims and was not then in a position to rule definitively upon the admissibility of evidence of Jordan's use of alcohol except, of course, on the question of liability. *See Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 549 P.2d 483 (1976).
>
> Moreover, the "order" was not as definite as Jordan asserts. Primarily, the court was confronted with an admission of liability. The court deferred ruling upon the question as it might pertain to damages. When that time came, when the evidence was in, the court ruled Jordan's use of alcohol was admissible for the purpose of assessing his physical condition. The court did not err. *Sarrio v. Reliable Contracting Co.,* 14 Md. App. 99, 286 A.2d 183 (1972); *D'Amato v. Johnston,* 140 Conn. 54, 97 A.2d 893 (1953).

*Jordan v. Berkey, supra* at 244–45.

The Court of Appeals in the present case stated:

> We believe there are times when motions in limine are, of necessity, tentative, advisory and not the basis of error because the prejudicial effect of the evidence can only be determined at the time it is introduced during trial. However, there are questions concerning admissibility of certain evidence that can and should be determined prior to trial by motions in limine for the benefit of the parties and the proper administration of justice. After all,
>
>> [t]he purpose of a motion in limine is to dispose of legal matters so counsel will not be forced to make comments in the presence of the jury which might prejudice his presentation.
>
> *State v. Evans,* 96 Wn.2d 119, 123, 634 P.2d 845 (1981). Furthermore, Washington courts in numerous cases have stated that rulings on motions in limine are more than tentative; and once the court has granted such a motion, no objection is necessary to preserve the right to claim error if the evidence is nevertheless admitted.

*State v. Latham,* 30 Wn. App. 776, 780, 638 P.2d 592 (1981).

The Court of Appeals found the trial judge in the subject case committed error, stating, "We find the court erred by reversing its prior ruling on the motion in limine after voir dire of the jury". *Latham,* at 780. The majority more or less agreed, saying that such conduct *may* constitute error. Both, however, emphatically conclude that the error was harmless. The Court of Appeals, at page 781 in *Latham,* said:

> The verdict of the jury in a criminal case will be set aside and a new trial granted only if the error is prejudicial; a prejudicial error is one which affects, or presumptively affects, the final result of the trial. *State v. Craig,* 82 Wn.2d 777, 784, 514 P.2d 151 (1973); *State v. Beard,* 74 Wn.2d 335, 341, 444 P.2d 651 (1968). When the defendant's guilt is consistently proven by competent evidence and no other rational conclusion can be reached then the conviction should not be set aside. *State v. Beard, supra* at 342. We hold that although the court committed error, the error was not prejudicial as it did not affect the final result.

I do not agree. A conviction for the crime of selling or dispensing hard drugs is extremely serious in light of the harm done by a drug seller to so many members of society. In many countries, a person convicted of such a crime is immediately executed by a firing squad. Any competent attorney would want to question each juror to determine whether or not the conviction of this heinous crime would have such a prejudicial effect against his client that a fair trial would be impossible. Here, the effect of his prior conviction on prospective jurors may have become obvious upon questioning, in light of the extremely negative responses many jurors had during voir dire concerning alcohol. For example, one juror was excused sua sponte without challenge from either counsel, because of "feelings" about anyone accused of a crime. Another juror's religious convictions made her firmly believe the consumption of alcohol was "wrong". Still another juror felt she could be fair except for one thing—she was "not sure regarding alcohol". The presence of alcohol alone might influence her judgment.

## Conclusion

I would have held it was prejudicial error for the judge to reverse himself after impanelment of a jury, permitting testimony as to the defendant's drug conviction. This action deprived the defendant of the opportunity to question on voir dire the various jurors as to what prejudice, if any, they might attach to such conviction. Such an error was clearly prejudicial.

I would remand to the trial court for a new trial in accordance with the provisions of this decision.

UTTER, J., concurs with DORE, J.

Reconsideration denied September 13, 1983.