156 P.3d 934 (2007)
STATE of Washington, Appellant,
v.
Jay S. BOIKO, Respondent.
No. 24534-9-III.
Court of Appeals of Washington, Division 3.
April 26, 2007.
*935 Michael George Sandona, Attorney at Law, Republic, WA, for Appellant.
Julian Elizabeth St. Marie, Law Offices of Julian St. Marie, Spokane, WA, for Respondent.
SCHULTHEIS, A.C.J.
¶ 1 A trial court is afforded great discretion and deference when ordering a new trial owing to juror bias. State v. Briggs, 55 Wash.App. 44, 60, 776 P.2d 1347 (1989). Jay Sidney Boiko was convicted of two counts of second degree rape. One of the jurors, an attorney who had applied for a job with the prosecutor one year earlier, did not disclose in voir dire that she was married to a key prosecution witness. We hold that the trial court did not abuse its considerable discretion by granting a new trial.

FACTS
¶ 2 Mr. Boiko was charged with two counts of second degree rape on November 22, 2004. The State asserted that Mr. Boiko raped D.P. two years earlier, and that the crime was reported by D.P. to his counselor, Robert Riley of Ferry County Community Services, who then took D.P. to the Ferry County Sheriff's Office to file a report. Mr. Riley ultimately testified to the circumstances surrounding D.P.'s reporting as well as D.P.'s psychological problems, medications, and stress related to the rape. Mr. Riley also provided an expert opinion to explain D.P.'s delay in reporting the crime.
¶ 3 Trial commenced on July 6, 2005. The venire completed questionnaires prior to jury selection. Juror 31 identified herself as an *936 attorney by profession. She marked the boxes to indicate that she was both married and separated. When asked to list immediate family members she responded by listing their names.
¶ 4 During voir dire, the court asked the jury panel if they knew certain trial participants and, if so, whether the jury members could be impartial based on those relationships. The jurors raised cards printed with their juror number in response to the questions so counsel could record their numbers and follow up with individual voir dire.
¶ 5 Juror 31 indicated that she had heard of the case involving Mr. Boiko. In individual voir dire, she responded that she did not have preconceived ideas about the case. She also indicated that she knew the prosecuting attorney, D.P., and Mr. Riley, but she did not raise her card when asked whether her acquaintance with those persons would interfere with her ability to be fair. During individual voir dire, she said how she knew D.P.  from his attendance at one martial arts class.
¶ 6 Juror 31 was not asked, and she did not volunteer, any additional information during voir dire. She was the first to be seated on the jury. Mr. Boiko was convicted.
¶ 7 Mr. Boiko brought a motion for a new trial upon learning that juror 31's relationship with Robert Riley was that of husband and wife.[1] The State responded with a declaration from juror 31. She stated that she was surprised she was allowed to sit on the jury as she was certain that the prosecutor would strike her because she was representing Ferry County Professional Services in an action against the Ferry County assessor in which the prosecutor was defense counsel that was set for trial in September of that year.
¶ 8 After hearing the matter on July 29, the trial court expressed an inclination to grant the motion based on implied bias given juror 31's marital relationship with Mr. Riley, a key witness for the State. See State v. Cho, 108 Wash.App. 315, 325 n. 5, 30 P.3d 496 (2001) (holding that a presumption of bias can arise from a juror's factual circumstances, such as a juror is a close relative of one of the participants in the trial) (citing Smith v. Phillips, 455 U.S. 209, 222, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring)). But the trial court ordered additional briefing and set the matter for rehearing.
¶ 9 At the next hearing on August 26, the prosecutor further disclosed that juror 31 had applied for a position with his office a year prior to Mr. Boiko's trial. The trial court ordered a new trial based on implied bias.

DISCUSSION
¶ 10 Both the United States and Washington State Constitutions provide a constitutional right to trial by jury that is to be preserved and remain inviolate. U.S. CONST. amend. VI; CONST. art. I, § 21. The failure to provide a defendant with a fair hearing violates minimal standards of due process. State v. Parnell, 77 Wash.2d 503, 507-08, 463 P.2d 134 (1969) (quoting Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)), overruled on other grounds by State v. Fire, 145 Wash.2d 152, 34 P.3d 1218 (2001). The right to trial by jury requires a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct. Smith v. Kent, 11 Wash.App. 439, 443, 523 P.2d 446 (1974).
¶ 11 The State contends that the trial court erred by ordering a new trial for Mr. Boiko. We afford the trial court great discretion when deciding whether to order a new trial; more deference is afforded a decision to grant a new trial than a decision not to grant a new trial. Briggs, 55 Wash.App. at 60, 776 P.2d 1347. The trial court's decision will not be overturned on appeal unless a clear abuse of that discretion is shown or the decision is based on an erroneous interpretation of the law. State v. Jackman, 113 Wash.2d 772, 777, 783 P.2d 580 (1989). A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *937 State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 12 The trial court held that Mr. Boiko was entitled to a new trial under the Sixth Amendment doctrine of implied bias. This doctrine applies only in certain exceptional circumstances. Cho, 108 Wash.App. at 325, 30 P.3d 496 (citing Smith, 455 U.S. at 222, 102 S.Ct. 940 (O'Connor, J., concurring)); see also McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556-57, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (Blackmun, Stevens, and O'Connor, JJ., concurring) (accepting doctrine of implied bias in exceptional circumstances); id. at 558, 104 S.Ct. 845 (Brennan and Marshall, JJ., concurring in the judgment) (same).
¶ 13 The State argues that Mr. Boiko is not entitled to a new trial because he did not show that juror 31 concealed material facts.
¶ 14 Typically, to obtain a new trial for juror bias for undisclosed information in voir dire, a party generally must show that (1) the juror intentionally failed to answer a material question and (2) a truthful disclosure would have provided a valid basis for a challenge for cause. McDonough, 464 U.S. at 556, 104 S.Ct. 845 (plurality opinion); Cho, 108 Wash.App. at 321, 30 P.3d 496; In re Pers. Restraint of Lord, 123 Wash.2d 296, 313, 868 P.2d 835, clarified, 123 Wash.2d 737, 870 P.2d 964 (1994) (citing Briggs, 55 Wash. App. at 52-53, 776 P.2d 1347).
¶ 15 In McDonough, a majority provided for a finding of implied bias without a showing of intentional concealment. 464 U.S. at 556-57, 104 S.Ct. 845 (Blackmun, J., concurring); id. at 558, 104 S.Ct. 845 (Brennan, J., concurring).[2] Instead of establishing intentional concealment, "[w]here a juror's responses on voir dire do not demonstrate actual bias, in exceptional cases the courts will draw a conclusive presumption of implied bias from the juror's factual circumstances." Cho, 108 Wash.App. at 325, 30 P.3d 496 (citing Smith, 455 U.S. at 222, 102 S.Ct. 940 (O'Connor, J., concurring)).[3]
¶ 16 Here, the trial court first concluded that juror 31 could have been more forthcoming in voir dire, but because information was provided in the juror questionnaire that could have encouraged counsel to inquire further, juror 31 did not fail to make material disclosures. Second, it concluded that Mr. *938 Riley was not a party for the purposes of the implied bias statute to allow a challenge for cause.[4] And, third, the trial court concluded that Mr. Riley was a key witness and close relative of juror 31, and held that there was an implied bias as a matter of law under Cho, Smith,[5] and Latham.[6]
¶ 17 The trial court implied prejudice in this case without a full-blown evidentiary hearing, which was entirely reasonable under the circumstances. When the State submitted its briefing, the prosecutor had already initiated contact with and obtained a declaration from juror 31 to respond to the motion for a new trial.[7] From these pleadings and colloquy at the hearings, the trial court discovered that the prosecutor knew juror 31 and that she had even applied for a job with the prosecutor and, further, she was involved in ongoing litigation with him as opposing counsel.
¶ 18 It is evident from the record that although neither the trial judge nor defense counsel knew juror 31, the prosecutor did. And the prosecutor did not make this disclosure. See CrR 7.5(a)(2) (providing for a new trial based on prosecutorial misconduct). The prosecutor's contacts with the jurors, although not necessarily inappropriate, when coupled with the undisclosed knowledge of and professional relationship with juror 31, may have influenced the court's decision to imply the bias, though no prosecutorial misconduct was found. See also McDonough, 464 U.S. at 556-57, 104 S.Ct. 845 (Blackmun, J., concurring); id. at 558, 104 S.Ct. 845 (Brennan, J., concurring).
¶ 19 The peculiarities arising in this situation were numerous, complex, and fairly considered by the trial court implying bias and ordering a new trial. The nature of juror 31's marital circumstances could inject any number of positive or negative emotions from the juror, whether conscious or not, that may manifest in supportive or obstructive reactions. See Smith, 455 U.S. at 221-22, 102 S.Ct. 940 (O'Connor, J., concurring) (noting that juror bias is elusive because the juror may not be aware of it). For instance, Juror 31's status as an attorney may have made her overconfident in her ability to detach her feelings for her husband or she may have been reluctant to declare to her peers in court that she would be unable to fairly consider the evidence. Ultimately, juror 31's presence may have had an affect on other jurors by inhibiting the frank discussion necessary to render an impartial verdict. A jury member inclined to believe an opposing witness would then be confronted with the prospect of having to criticize Mr. Riley to juror 31's face.
¶ 20 The State asserts that juror 31's marital relationship with Mr. Riley is not relevant because the plain language of the implied bias statute limits the relationships under which implied bias may be found: "A challenge for implied bias may be taken for any *939 or all of the [enumerated] causes, and not otherwise." RCW 4.44.180 (emphasis added). A witness/juror relationship is not among the enumerated causes. But "[c]onsanguinity or affinity within the fourth degree to either party" is a statutory basis. RCW 4.44.180(1).
¶ 21 The State argues that Mr. Riley is not a party and because Cho does not meaningfully address the civil implied bias statute, it "suffers from an error." Appellant's Br. at 30. Cho addresses the fair trial standards required for criminal defendants under the sixth amendment to the United States Constitution as decided in Smith, 455 U.S. at 224, 102 S.Ct. 940 (O'Connor, J., concurring) and McDonough, 464 U.S. at 556-57, 104 S.Ct. 845 (Blackmun, J., concurring); 464 U.S. at 558, 104 S.Ct. 845 (Brennan, J. concurring). Cho, 108 Wash.App. at 325, 30 P.3d 496.
¶ 22 The statute does govern a party's challenge for cause on implied bias. CrR 6.4(c)(2). But CrR 6.4(c)(1) permits the trial judge to excuse a juror, sua sponte, when the judge believes that grounds for challenge are present. The criminal rules govern criminal procedure, and the rules supersede all procedural statutes in conflict with the rules. CrR 1.1. Moreover, under RCW 2.36.110, the judge has a duty "to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service." See, e.g., State v. Stackhouse, 90 Wash.App. 344, 352, 957 P.2d 218 (1998) (granting a motion for a new trial where two empaneled jurors knew about prior murder charges the defendant had faced).
¶ 23 We construe the civil implied bias statute in Mr. Boiko's favor. See, e.g., Wichert v. Cardwell, 117 Wash.2d 148, 151, 812 P.2d 858 (1991) (declining to strictly construe civil procedure statute permitting substitute service); Moore v. Keesey, 26 Wash.2d 31, 173 P.2d 130 (1946) (noting that procedural statutes are construed liberally to preserve a party's right to a fair trial); see also State v. Tili, 139 Wash.2d 107, 113, 985 P.2d 365 (1999) (under the rule of lenity, any ambiguity in a criminal statute must be resolved in favor of the accused and against the state).[8]
¶ 24 Our courts have held that the employer of the murder victim was disqualified as a juror on the ground of implied bias. State v. Coella, 3 Wash. 99, 103, 28 P. 28 (1891). In Coella, the court observed that in a civil trial between the victim and the defendant, the victim's employer would have been disqualified as a juror under the then-existing statute disqualifying a juror standing in the relation of master and servant to a party. Id. (citing WASH. REV.CODE § 212 (1881) (recodified as RCW 4.44.180(2))). Therefore, the court reasoned, "while, of course, the deceased could not be a party to the prosecution, yet, for the purpose of impaneling a jury he should be considered as an adverse party to the defendant." Id. Mr. Riley could be properly viewed as a plaintiff, particularly considering that he acted as the victim's advocate.
¶ 25 The State argues that Mr. Boiko waived the right to challenge the qualification of juror 31. It relies on Basil v. Pope, 165 Wash. 212, 218, 5 P.2d 329 (1931), which quoted State v. Clark, 34 Wash. 485, 492, 76 P. 98 (1904). Clark comments on a long-defunct statute regarding juror qualifications, which expressly provided that an appeal of a jury verdict on the grounds of jury qualifications can only be made on the specific challenge for cause made below. Clark, 34 Wash. at 492, 76 P. 98 (citing § 5940, PIERCE'S CODE). Therefore, neither case is relevant. Moreover, the court in Cho held that an implied bias challenge could be made for the first time on appeal. 108 Wash.App. *940 at 329, 30 P.3d 496 ("It goes to the impartiality of the fact finder, a right guaranteed by the Sixth Amendment and a touchstone of the constitutional guarantee of a fair trial.").
¶ 26 The State also cites a number of cases it purports to hold that the unintentional failure to disclose nonmaterial information does not require a new trial. Appellant's Br. at 28-29. These cases, however, predate Cho. "Where [such juror] misconduct . . . is raised after the verdict has been returned by the jury, the single available remedy is the granting of a new trial." 5 WAYNE R. LAFAVE, ET AL., CRIMINAL PROCEDURE § 24.9(f), at 607 (1999); see also Allison v. Dep't of Labor & Indus., 66 Wash.2d 263, 265, 401 P.2d 982 (1965). "This is true even if the misconduct affected a single juror and that juror's vote was not needed (i.e., the jurisdiction accepted less than unanimous verdicts), as the juror participated in the deliberations and may have influenced others." 5 LAFAVE, supra, § 24.9(f), at 607. A new trial is the proper remedy.

CONCLUSION
¶ 27 The trial court did not abuse its discretion in ordering a new trial. We therefore affirm the trial court's order.
WE CONCUR: BROWN, J. and KATO, J., Pro Tem.
NOTES
[1] The exact timing and circumstances of Mr. Boiko's discovery of the relationship between juror 31 and Mr. Riley cannot be discerned from the record.
[2] Justice Rehnquist wrote what is labeled the opinion of the court, but it is actually a plurality. Justice Blackmun, with Justices Stevens and O'Connor joining, wrote a concurring opinion. McDonough, 464 U.S. at 556, 104 S.Ct. 845. Justice Brennan, joined by Justice Marshall, concurred in the judgment only. McDonough, 464 U.S. at 557, 104 S.Ct. 845. The concurrences agreed that bias could be implied.

Justice Blackmun declined to hold that a juror must intentionally withhold information in order for a new trial to be granted for implied bias. McDonough, 464 U.S. at 556, 104 S.Ct. 845 (Blackmun, J., concurring). His concurrence stated that "in most cases, the honesty or dishonesty of a juror's response is the best initial indicator of whether the juror in fact was impartial." Id. But "regardless of whether a juror's answer is honest or dishonest, it remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to be inferred." Id. at 556-57, 104 S.Ct. 845 (citing Smith, 455 U.S. at 215-16, 102 S.Ct. 940; id. at 221-24, 102 S.Ct. 940 (O'Connor, J., concurring)). Justice Blackmun's test allows implied bias as a way around the first prong of the plurality's requirement of intentional concealment.
Justice Brennan wrote that the trial court need not find juror misconduct to grant a new trial. McDonough, 464 U.S. at 558, 104 S.Ct. 845 (Brennan, J., concurring). His concurrence suggests that the trial court answer two questions when considering a new trial for implied bias: (1) are there any facts suggesting that bias should be conclusively presumed as a matter of law; and, if not, (2) "is it more probable than not that the juror was actually biased against the litigant." Id. And the juror's honest or dishonest intent is merely one factor to consider in making the actual bias determination, if need be.
Thus, a majority in fact provided for a finding of implied bias without a showing of intentional concealment.
[3] Mr. Boiko argues that he is entitled to a new trial if a prospective juror, through a false answer, either (1) conceals or misrepresents bias or prejudice or (2) prevents the intelligent exercise of a preemptory challenge or a challenge for cause. Kent, 11 Wash.App. at 443, 523 P.2d 446. But as this court noted: "10 years after Kent, the United States Supreme Court set forth the rule under the federal constitution." Hill v. GTE Directories Sales Corp., 71 Wash.App. 132, 141, 856 P.2d 746 (1993) (citing McDonough, 464 U.S. at 556, 104 S.Ct. 845).
[4] The implied bias statute relevantly provides:

"A challenge for implied bias may be taken for any or all of the following causes, and not otherwise:
"(1) Consanguinity or affinity within the fourth degree to either party.
"(2) Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to a party; or being a member of the family of, or a partner in business with, or in the employment for wages, of a party, or being surety or bail in the action called for trial, or otherwise, for a party." RCW 4.44.180.
[5] Other state courts have employed Justice O'Connor's analysis. For example, in State v. Sanchez, 120 N.M. 247, 901 P.2d 178, 183 (1995), the court held that although juror bias could be implied as a matter of law under Smith, the connection between a victim's advocate (the juror's sister) and the prosecutor's office that employed her was indirect and insufficient to support the implication. Thus, the court held it was not an abuse of discretion to deny a new trial. In this case, rather than the minor or undefined role of the trial participant in Sanchez, the trial court referred to Mr. Riley as a key witness for the State.
[6] State v. Latham, 100 Wash.2d 59, 667 P.2d 56 (1983). In Latham, our Supreme Court recognized that a defendant's right to a fair and impartial jury includes the right to have a juror excused if the trial judge believes that grounds for challenge are present. CrR 6.4(c)(1). 100 Wash.2d at 63, 667 P.2d 56. The trial court's citation to Latham implies that it would have exercised its sua sponte authority to excuse the juror under the rule. We defer to the trial court's judgment. State v. Noltie, 116 Wash.2d 831, 839, 809 P.2d 190 (1991).
[7] The prosecutor had also obtained an affidavit from another juror regarding another subject.
[8] Notably, RCW 4.44.180 is archaic. It was amended only once since 1881. A 2003 amendment expanded challenges for cause. Martini v. State, 121 Wash.App. 150, 168, 89 P.3d 250 (2004). When the statute was enacted, women were not allowed to vote and could not be jurors. See Harland v. Territory, 3 Wash. Terr. 131, 152, 13 P. 453 (1887) ("Females, then, are not voters in this territory, and not being voters, they are not competent to sit on juries"); Rosencrantz v. Territory, 2 Wash. Terr. 267, 273, 5 P. 305 (1884) (construing an 1881 state statute that provided for grand jury service in criminal trials by all "householders," to include married women), overruled by Harland. Thus, there was no prospect of a woman juror encountering her spouse as a party or trial participant at the time of the statute's enactment.