# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54547-1-II |
| Respondent, | |
| THEOTRY DONZELL OLSON, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Theotry Olson appeals his convictions of first degree unlawful possession of a firearm and unlawful display of a weapon. The convictions arose from an incident in which Olson displayed a firearm during a party at the house of Daniel Martinez and his roommate Hector.[1] Martinez testified at trial, but Hector did not.

During trial, it was revealed that juror 9 was related in some way to Martinez and Hector. However, she did not know Martinez's name or nickname and had no relationship with him. In comparison, juror 9 was close to Hector. RCW 4.44.180(1) states that a juror has implied bias if they have "[c]onsanguinity or affinity within the fourth degree to either party." The trial court denied Olson's motion for a mistrial based on juror 9's presence on the jury.

We hold that the trial court did not err in denying Olson's motion for a mistrial because (1) Olson did not show that juror 9 was related to either Martinez or Hector within the fourth degree, and (2) leaving juror 9 on the jury did not violate Olson's constitutional right to an

---

[1] We refer to Hector by his first name because his last name is not available from the record. No disrespect is intended.

impartial jury because her relationship with Martinez was tenuous at best and the court was satisfied with the juror's ability to remain fair and impartial to both sides. Accordingly, we affirm Olson's convictions.

## FACTS

In November 2019, Olson and his fiancé Bhrianna Kauer were at Martinez's and Hector's house for a party. Salvador Enriquez also attended the party. At some point, Enriquez called 911, telling the operator that Olson had pulled out a gun and was aiming it at people. The police arrived and arrested Olson.

The State charged Olson with first degree unlawful possession of a firearm and unlawful display of a weapon.

During jury selection, the trial court read to the prospective jurors the first and last name of all the testifying witnesses, including Martinez's, and asked whether any of the prospective jurors were acquainted with the witnesses in any way. None of the jurors raised their hands, including juror 9. The jurors were not asked if they knew Hector.

The State called Enriquez as its first witness and Martinez as its second witness. Before Martinez testified, he informed the State that he recognized juror 9 as somebody he knew. The State told the trial court that Martinez made it sound like he was not extremely close to juror 9, that she may not know his name, but that his cousin used to play with her.

The trial court called juror 9 into the courtroom to confirm whether she knew Martinez. Juror 9 did not recognize his name. The court had Martinez briefly come into the courtroom, and juror 9 stated that she recognized him. She stated that she was "related to Hector, and so that's how I know him. But I didn't know his name or his last name because they gave him a nickname." 1 Report of Proceedings (RP) at 94. Juror 9 also could not recall the nickname.

Juror 9 stated, "I don't really talk to [Martinez] that much, but I am pretty close with Hector, now that I know that that's which Hector we are talking about." 1 RP at 94.

When asked how she knew Martinez, juror 9 stated that he was her uncle's nephew. She stated that she really did not have a relationship with him. She had last talked to Martinez some time the previous year. On the other hand, she had spoken with Hector a month earlier, had been to his house two years earlier, and used to work for him. When asked whether she considered Martinez family, juror 9 responded, "As much as I consider Hector family." 1 RP at 95. Juror 9 believed that she knew Martinez's parents, but did not know them any better than Martinez.

Juror 9 stated that she did not know anything about the case before the trial started. Hector had never mentioned the incident to her. The State asked juror 9 whether she could remain fair and impartial to both sides despite knowing that Martinez and Hector were involved. She stated that she felt no differently about the case, that she would feel no differently about Martinez's testimony than the other witnesses that she did not know, and that she could remain fair and impartial to both sides even though there was testimony about what had happened to Hector.

After the State had asked juror 9 questions, Olson declined to question her any further. Specifically, defense counsel stated, "I think she has said enough. I have no questions." 1 RP at 98.

Olson moved for a mistrial on the grounds that the information juror 9 had just given likely would have led him to use a peremptory challenge on her or to strike her for cause because of bias. The trial court denied the motion, stating that it saw no reason to excuse juror 9. The court stated that "her connections to a witness are so tenuous" and "she believes that she can be a

fair and impartial juror." 1 RP at 101. However, the court did say that Olson could raise the issue again later.

On the next day of trial, Olson asked the trial court for the opportunity to question juror 9 again. The court denied the request because additional questioning might interfere with her ability to remain fair and impartial. Olson later renewed his motion for a mistrial based on his constitutional right to a fair trial by an impartial jury. The court again denied the motion, in part because there was no basis in the record for striking juror 9 for cause. The court emphasized that juror 9 indicated that she could be fair and impartial and her relationship with Martinez was relatively remote.

The jury convicted Olson of first degree unlawful possession of a firearm and unlawful display of a weapon. Olson appeals his convictions.

ANALYSIS

A.    LEGAL PRINCIPLES

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to a fair trial by an impartial jury. *State v. Gaines*, 194 Wn. App. 892, 896, 380 P.3d 540 (2016). This right includes the right to " 'a trial by an unbiased and unprejudiced jury.' " *Id.* (quoting *State v. Tigano*, 63 Wn. App. 336, 341, 818 P.2d 1369 (1991)). The inclusion of a biased juror on a jury violates the constitutional right to a fair trial, regardless of whether the bias is actual or implied. *State v. Taylor*, 18 Wn. App. 2d 568, 577, 490 P.3d 263 (2021).

In addition to the constitutional right, several statutes address the dismissal of jurors because of bias. RCW 4.44.170(1)-(2) states that a juror can be challenged for implied bias or actual bias. Implied bias requires "the existence of the facts [that] in judgment of law

disqualifies the juror." RCW 4.44.170(1). One of the exclusive definitions of implied bias is when the juror has "[c]onsanguinity or affinity within the fourth degree to either party." RCW 4.44.180(1). Actual bias requires "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2).

The party claiming juror bias has the burden of showing by a preponderance of the evidence the facts necessary to show bias. *State v. Wilson*, 141 Wn. App. 597, 606, 171 P.3d 501 (2007).

RCW 2.36.110 provides that the trial court has a duty to excuse a juror who has manifested unfitness because of bias. We review for an abuse of discretion a trial court's decision regarding the dismissal of a juror under this statute. *State v. Lawler*, 194 Wn. App. 275, 282, 374 P.3d 278 (2016). We defer to the trial court because the court can observe the juror's demeanor and therefore is in the best position to evaluate the juror's answers and to determine whether or not the juror is biased. *See id.*

At issue here is not a challenge to a juror for cause but a mistrial motion. " 'A mistrial should be granted only when the defendant has been so prejudiced that nothing short of a new trial can insure that defendant will be tried fairly.' " *Gaines*, 194 Wn. App. at 897 (quoting *State v. Gilcrist*, 91 Wn.2d 603, 612, 590 P.2d 809 (1979)). Prejudice occurs when a trial irregularity affects the outcome of the trial. *Gaines*, 194 Wn. App. at 897. We review for an abuse of discretion a trial court's denial of a motion for mistrial based on a problem with a juror. *See id.* at 896 (juror misconduct).

B.    IMPLIED BIAS UNDER RCW 4.44.180(1)

Olson argues that the trial court erred when it denied his motion for a mistrial because juror 9's familial relationship with Martinez and Hector constituted implied bias under RCW 4.44.180(1).  Specifically, he claims that Martinez and Hector were "parties" under RCW 4.44.180(1) because they were victims of his offenses and Martinez was a prosecution witness.  We hold that RCW 4.44.180(1) does not apply here because there is insufficient evidence that juror 9 was related within the fourth degree to either Martinez or Hector.

Juror 9 stated that Martinez was her uncle's nephew.  Olson presumes that this means that Martinez was juror 9's first cousin, the son of one of the uncle's brothers or sisters and therefore the son of one of juror 9's aunts or uncles.  First cousins are considered to be in the fourth degree of consanguinity.  *Immediate Family Members*, UNIV. OF ALA. AT BIRMINGHAM, https://www.uab.edu/humanresources/home/images/M_images/Relations/PDFS/FAMILY%20M EMBER%20CHART.pdf [https://perma.cc/HR5X-96VH].

However, Martinez also could have been juror 9's uncle's nephew on the uncle's *wife's* side of the family.  This would make Martinez the son of one of the *wife's* brothers or sisters.  In that situation, juror 9 would not be a blood relative of Martinez and RCW 4.44.180(1) would be inapplicable.

The evidence suggests the latter arrangement.  Juror 9 did not recognize Martinez by name and did not even remember his name or nickname.  This would be unlikely if Martinez actually was a first cousin living in the same area.  And she did not refer to him as her cousin, nor did Martinez refer to juror 9 as his cousin.  Further, juror 9 believed that she knew Martinez's parents, but she did not know them any better than she knew Martinez.  Again, this would be unlikely if Martinez's parents were her aunt and uncle within her immediate family.

Regarding Hector, juror 9 stated only that she was "related" to him.  1 RP at 94.  But the record does not disclose how she was related to him.  However, juror 9's lack of specificity suggests that he was a more distant relative than an uncle (third degree) or cousin (fourth degree).  Otherwise, she presumably would have said that Hector was her cousin or uncle rather than giving a vague answer.

Olson argues that the trial court erred in preventing him from further questioning juror nine about her relationship with Martinez and Hector.  But Olson did not tell the court what more he planned to ask.  He merely speculates that he would have discovered more information that would have revealed juror 9's alleged bias.  More important, Olson had the opportunity to examine juror nine when her connections to Martinez and Hector first came to light, but he believed that "she has said enough" and that he had no further questions.  1 RP at 98.  Therefore, Olson was not denied a right to examine juror 9.

The record is unclear whether juror 9 was related to either Martinez or Hector to the fourth degree.  Because Olson has the burden of proof, we hold that RCW 4.44.180(1) is inapplicable.[2]

C.    CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY

Olson argues that apart from RCW 4.44.180(1), the fact that Martinez and Hector were juror 9's "relatives" violated his constitutional right to an impartial jury.  We disagree.

As noted above, criminal defendants have a constitutional right to a fair trial by an impartial, unbiased jury.  *Gaines*, 194 Wn. App. at 896.  The issue of implied bias implicates this right.  *State v. Cho*, 108 Wn. App. 315, 329, 30 P.3d 496 (2001).  We review de novo alleged

---

[2] Because of our holding, we do not address Olson's argument that Martinez and Hector were "parties" within the meaning of RCW 4.44.180(1) on the grounds that they were victims of one of his offenses and that Martinez was a "party" because he was a prosecution witness.

violations of the right to a jury trial. *State v. Siers*, 174 Wn.2d 269, 273-74, 274 P.3d 358 (2012).

Olson relies on Justice O'Connor's concurring opinion in *Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). Justice O'Connor stated that "there are some extreme situations that would justify a finding of implied bias," including when a juror "is a close relative of one of the participants in the trial or the criminal transaction." *Id.* at 222 (O'Connor, J., concurring). The court in *State v. Boiko* also emphasized that the constitutional doctrine of implied bias "applies only in certain exceptional circumstances." 138 Wn. App. 256, 261, 156 P.3d 934 (2007).

Here, as discussed above, nothing in the record suggests that either Martinez or Hector was a "close" relative of juror 9. During questioning, juror 9 simply stated that Martinez was her uncle's nephew and she had no relationship with him, but that she considered him family as much as she considered Hector family. Juror 9 stated that she was related to Hector, but was not questioned about how exactly they were related.

In addition, the circumstances here do not suggest that this case is one of the extreme situations to which Justice O'Connor referred in *Smith*. Juror 9's connection to Martinez was extremely tenuous. She did not even know his name. She was closer to Hector, but he did not testify. And juror 9 stated that she knew nothing about the case, would not feel differently about Martinez's testimony, and could remain fair and impartial to both sides. The trial court was in the best position to observe juror 9's demeanor and to evaluate her answers and to determine whether or not she was biased. *Lawler*, 194 Wn. App. at 282. Even in a de novo review, we defer to the trial court's credibility determination.

We hold that the trial court's failure to dismiss juror 9 did not violate Olson's constitutional right to an impartial jury.

CONCLUSION

We affirm Olson's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.


We concur:

_____
GLASGOW, A.C.J.

_____
VELJACIC, J.