# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON ,

     Respondent,

   v.

JOHN HARRIS, JR.,

     Appellant.

No. 69202-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 12, 2013

APPELWICK, J. — Harris challenges the sufficiency of the evidence supporting his convictions by a jury for hit and run of an attended vehicle, DUI, and attempting to elude a police vehicle. We affirm. However, because the sentencing court's intent is unclear with respect to the amount imposed as a monetary DUI penalty, we remand for clarification or correction of the judgment and sentence as necessary.

## FACTS

Around midnight on September 6, 2010, Naomi Yonemura was driving home from a friend's house. She heard squealing tires as a pickup truck moved into her lane of traffic. Unable to stop, Yonemura's car collided with the truck. The driver of the truck extricated the vehicle from Yonemura's car's bumper, "sped off" a short distance, and parked on the side of the road. Then, a man got out of the truck and approached Yonemura's car. Yonemura accused the man of "peel[ing] out" in front of her and causing the accident. The man denied it. Then, while looking through some items he pulled out from his pocket, the man told Yonemura that he worked for a "car detailer shop" and would give her his card so she could take her car there for repairs.

But, the man did not give Yonemura a card. Instead, after she asked for his information, he yelled at her to move her car out of the street, walked away, and got

back into the truck. Yonemura borrowed a cell phone from a pedestrian standing nearby and called 911. She provided the truck's North Carolina license plate number to the dispatch operator.

Meanwhile, two Seattle police officers were enroute to the area in response to a call from an establishment adjacent to the scene of the accident reporting a person waving a gun. As the officers approached, they observed a red Nissan pickup truck with North Carolina license plates pull out onto the road at high speed without lights on. Then, the truck illegally turned on a red light in front of a Metro bus, causing the bus to slow down to avoid a collision. Some teenagers standing on the side of the road pointed to the truck, indicating that the person police were looking for was in the vehicle.

The police officers followed the truck. They pulled up behind the truck in the left-hand turn lane and activated the patrol car's emergency lights. When the light changed, the truck accelerated quickly, causing the tires to lose traction and squeal. The truck then cut across all lanes of traffic to make a right turn without using a directional signal. Once the truck rounded the corner, it "took off," squealing its tires, travelling at least 20 miles over the speed limit. The truck drifted over the line dividing traffic lanes a couple of times and appeared to be speeding. The truck turned, again, taking the corner too fast and squealing the tires. The truck stopped behind another car at a red light, made another turn, and accelerated away from the patrol car. Finally, the truck pulled up onto the sidewalk at the scene of the accident and stopped abruptly, causing nearby pedestrians to jump backwards. A man, later identified as John Harris, jumped out of the truck.

When the officers arrested Harris, they observed that he appeared to be agitated and "altered" as if possibly high on drugs. They also noticed damage to the driver's side door of the truck.

At the police station shortly after, Harris vomited in the holding cell. The vomit was all liquid and reeked of alcohol. Harris had watery bloodshot eyes and a "very difficult time" standing and walking. Even after rinsing his mouth out, Harris smelled of alcohol. He refused to take a breath test.

The State charged Harris with hit and run of an attended vehicle, driving under the influence (DUI), and attempting to elude a police vehicle. Following trial, a jury convicted him on all counts. Harris appeals and challenges the sufficiency of the evidence supporting his convictions.

## DISCUSSION

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn there from." Id. Circumstantial evidence and direct evidence are equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). The court defers to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

If the driver of a vehicle is involved in an accident that results in damage to an attended vehicle, he or she must move the vehicle out of lanes of traffic as soon as

3

possible, remain at the scene, render assistance, and provide his or her identification and insurance information. RCW 46.52.020(2), (3). To convict a person of hit and run under this statute, the State must also prove that the defendant knew he was involved in an accident. State v. Vela, 100 Wn.2d 636, 639, 673 P.2d 185 (1983).

Harris claims the evidence did not establish that he was the driver of the truck when it was involved in the accident with Yonemura's car. Because the truck had tinted windows, Yonemura was not able to see the driver at the time of crash. Afterward, she was not able to positively identify Harris in a photo montage as the man who approached her car after the accident. According to Harris, Yonemura did not accurately describe him. And, while Harris concedes that he was driving the truck shortly after the accident when he eventually stopped for the police, he points out that there were at least two people in the vehicle.

But, there was no evidence of anyone in the truck other than Harris and a female passenger, who was undisputedly not the person who approached Yonemura's car. And, although Yonemura was not able to identify Harris in the photo montage, other than Harris's age, her description was consistent with Harris's physical characteristics.[1] The jury could reasonably draw the inference that the person who approached Yonemura's car was the driver of the truck, and was also the same person who fled and then returned to the location of the accident. In short, there was ample circumstantial evidence to convince a rational trier of fact that Harris was the driver who collided with Yonemura's car and then left the scene.

---

[1] Yonemura estimated that the person who approached her was in his mid-thirties. Harris was actually fifty-two at the time of the incident.

A driver commits the offense of attempting to elude police when he (1) willfully fails or refuses to immediately bring his vehicle to a stop, (2) after a uniformed officer in a marked vehicle gives a visual or audible signal to stop, and (3) drives his vehicle in a reckless manner while attempting to elude a pursing police vehicle. RCW 46.61.024(1). Driving in a reckless manner means driving in a rash or heedless manner, indifferent to the consequences. State v. Roggenkamp, 153 Wn.2d 614, 622, 106 P.3d 196 (2005).

While acknowledging that he briefly travelled at a high rate of speed during the incident, Harris contends that he was not reckless because, for the most part, he obeyed traffic rules and stayed in his lane of travel. Harris contrasts his driving with arguably more egregious driving described in other cases. See State v. Chouap, 170 Wn. App. 114, 119-20, 285 P.3d 138 (2012) (driver travelled 70 miles per hour in an area with posted limits of 30 to 35 mph); see also State v. Perez, 166 Wn. App. 55, 58-59, 269 P.3d 372 (2012) (going 25 miles over speed limit, driver ran a stop sign, endangering a pedestrian).

But, viewed in the light most favorable to the State, the evidence was sufficient to prove that Harris drove recklessly and satisfied the elements of the crime of attempting to elude. The evidence showed that after the police signaled for him to pull over, Harris abruptly "cut across two lanes of traffic aggressively made the corner," "squealed" his tires, and "sped off." After making the turn, he was speeding and drifting across the line dividing traffic lanes. He made two more wide turns, again breaking traction and squealing the tires. Finally, Harris pulled up on the sidewalk without adequately decelerating, causing pedestrians to jump out of the way and the pursuing police officers to fear he would hit the light pole. Harris passed a number of places where he

could have safely pulled over, and all of this occurred in the midst of vehicle traffic and in a residential area with significant foot traffic. Based on this evidence, the jury could conclude that Harris drove recklessly and was indifferent to the consequences.

With respect to the DUI conviction, the State had to prove that Harris drove a vehicle within the state while under the influence of intoxicating liquor. RCW 46.61.502(1)(c); State v. Shabel, 95 Wn. App. 469, 474, 976 P.2d 153 (1999). Harris claims the "limited circumstantial evidence" was not sufficient. But, the officers' description of Harris's erratic driving was consistent with the effects of alcohol. Also, the officer who interacted with Harris at the police station testified that Harris vomited, smelled of alcohol, and displayed other physical signs of intoxication such as bloodshot watery eyes, and lack of coordination and balance. The jury also viewed a video clip of Harris at the police station after his arrest. Although police officers did not perform field sobriety tests, an officer explained that the omission was partly because such balancing tests are potentially dangerous where the suspect's coordination is obviously compromised. We disagree with the characterization of this evidence as limited. There was significant circumstantial evidence supporting the jury's finding that Harris was driving under the influence of alcohol. See State v. Wilhelm, 78 Wn. App. 188, 192-93, 896 P.2d 105 (1995) (strong circumstantial evidence of intoxication included watery and bloodshot eyes, odor of alcohol, slurred speech, unsteady balance, lack of coordination, and field sobriety test failure).

Finally, Harris challenges the trial court's imposition of $1,545.50 as a monetary DUI penalty.[2] Based on a prior DUI conviction within seven years of the current offense and the jury's finding that Harris refused to undergo a breath test, he was subject to a monetary penalty of between $750 and $5,000. RCW 46.61.5055.[3] Because the court orally stated its intent to impose the mandatory minimum monetary DUI penalty, Harris asks that we remand for the trial court to correct the judgment and sentence.[4] As the State concedes, there is an apparent contradiction between the court's oral pronouncement and the judgment and sentence and the trial court's intent is therefore unclear. Accordingly, we remand for the trial court to correct the judgment and sentence, as the court deems appropriate.

WE CONCUR:

_Appelwick, J._

_Leach, C.J._

_Cox, J._

---

[2] The judgment states that $1,545.50 is imposed "because this is a 2nd DUI offense within 7 years."

[3] RCW 46.61.5055 has been amended several times since Harris's 2010 offense, but the $750 minimum monetary penalty remains unchanged.

[4] According to the State, the mandatory minimum fine the court could have imposed was $925, which includes the $750 minimum fine under RCW 46.61.5055(2)(b)(ii) and $175 in fines under former RCW 46.61.5054(1)(a) (1995) and RCW 46.64.055(1).