[No. 29597-4-III.   Division Three.   January 24, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER PEREZ, *Appellant*.

58

*Marie J. Trombley*, for appellant.

*D. Angus Lee, Prosecuting Attorney*, and *Douglas R. Mitchell, Deputy*, for respondent.

¶1 SWEENEY, J. — This appeal is from a conviction for attempting to elude. The defendant claims that the evidence was not sufficient to support the elements of attempting to elude. Clearly, it is. He also assigns error to the court's refusal to grant a new trial based on juror misconduct. The juror reported to the judge early in the trial that he recalled a passing familiarity with the defendant and his family. The court did not report this to counsel until after the verdict. We conclude nonetheless that there is no showing of actual bias, the defendant would not have had a challenge for cause, and therefore the judge did not abuse his discretion by denying the motion for new trial.

## FACTS

¶2 Sergeant Brian L. Jones of the Moses Lake Police Department patrolled the city of Moses Lake on the afternoon of June 8, 2010. He drove an unmarked gray 2009 Ford Crown Victoria squad car with exempt plates, a spotlight, and internal emergency lights (rather than the traditional external light bar and police push bar). Sergeant Jones wore his uniform.

¶3 At around 4:13 p.m., Sergeant Jones passed Christopher Perez driving in the opposite direction. Sergeant Jones believed Mr. Perez's license had been suspended so he turned around to follow Mr. Perez. A camera mounted in the patrol car recorded the pursuit. Sergeant Jones caught up to Mr. Perez. Mr. Perez increased his speed from 25 miles per hour (the posted speed limit) to at least 50 miles per

hour. A single car separated the patrol car from Mr. Perez's car.

¶4 Sergeant Jones activated his emergency lights and passed the intervening car. He then watched as Mr. Perez sped past a pedestrian walking a dog; the pedestrian threw up his arms and his dog bolted. Sergeant Jones briefly activated his siren to warn the pedestrian that he too would pass. Mr. Perez ran a stop sign at an intersection. Sergeant Jones followed Mr. Perez into the parking lot of an apartment complex. Mr. Perez got out of his car and ran. Sergeant Jones pursued on foot, caught up with him, and arrested him.

¶5 The State charged Mr. Perez with attempting to elude and driving while license suspended/revoked in the first degree. The case proceeded to a jury trial. The State showed the jury the video of the pursuit, and Sergeant Jones narrated events. The video showed Mr. Perez get out of his car, leave the driver's door open, and run. Mr. Perez moved to dismiss the attempting to elude charge and argued that the evidence was insufficient. He said that he did not know Sergeant Jones was signaling for him to stop. The court concluded that the evidence was sufficient to send the matter to the jury and denied his motion to dismiss. The jury also concluded the State's showing was sufficient and found Mr. Perez guilty on both counts.

¶6 On the date set for sentencing, Mr. Perez's counsel told the court that she had received a telephone message from Mr. Perez over the weekend; he told her that one of the jurors was acquainted with him and his family. The court then told the parties that he had received a message from the bailiff after the jury was selected (but before the verdict) that one of the jurors thought he might be acquainted with Mr. Perez's father. The court apparently had instructed the bailiff to inform the court if the juror said anything else about the matter. The court decided to summon the juror for further inquiry.

¶7 The juror testified that he did not recognize the name "Christopher Perez" until after the trial started. He then remembered that he may have met Mr. Perez at church some 20-plus years earlier but did not recall any specifics. He also remembered being casually acquainted with Mr. Perez's father and mother from church. A long time back, he saw a police report regarding Mr. Perez but he had no knowledge of the charges against Mr. Perez when he arrived for jury duty. And the juror testified that his acquaintance with the family did not affect his view of things.

¶8 Mr. Perez moved for a new trial and argued that he was denied the opportunity to challenge this juror. The court found that the juror had had only infrequent contact with the Perez family, could not recall any specific activity with Mr. Perez himself, and had forgotten what he read in a police report. And the court denied the motion for a new trial. We will expand on this factual narrative more fully in our discussion of Mr. Perez's assignment of error to the court's refusal to grant a new trial. Mr. Perez appeals his conviction for attempting to elude.

## DISCUSSION

SUFFICIENCY OF THE EVIDENCE—ELUDING

¶9 Mr. Perez contends that the evidence does not support the conviction for attempting to elude a pursuing police vehicle. We review the evidence in the light most favorable to the State and decide whether any rational trier of fact could have found the essential elements of eluding. *State v. Townsend*, 147 Wn.2d 666, 679, 57 P.3d 255 (2002). Mr. Perez's challenge admits the truth of the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). And "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* The credibility of the witnesses is for the jury. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

■ ¶10 The State had to show a couple of things to prove the crime of attempting to elude a pursuing police vehicle. First, the State had to show that Mr. Perez willfully failed or refused to bring his vehicle to a stop after being given a visual or audible signal to bring the vehicle to a stop by a police officer, and next, that in doing so, he drove in a reckless manner. RCW 46.61.024(1).

■ ¶11 Mr. Perez contends that the evidence does not show that he willfully failed to stop. He argues that he was never aware a police officer was behind him, and he never saw lights or heard a siren. What is apparent here is that the jury did not believe him. And the State's evidence supports just the opposite conclusion.

¶12 Sergeant Jones recognized Mr. Perez and believed he had a suspended license. He turned his patrol car around, activated his emergency lights, and followed Mr. Perez. Mr. Perez immediately accelerated to over 50 miles per hour in a 25-mile-per-hour zone. Mr. Perez frightened a pedestrian, scared a dog, and then ran a stop sign. Sergeant Jones activated his siren briefly. Mr. Perez threw open his car door, left the door open, and ran. The jury watched the entire 40-second pursuit and could easily infer that Mr. Perez saw the police and tried to get away by car and later on foot.

INEFFECTIVE ASSISTANCE OF COUNSEL—AFFIRMATIVE DEFENSE

■ ¶13 Mr. Perez next contends that his lawyer was ineffective because she failed to propose an instruction on "reasonable belief," an instruction permitted by RCW 46.61.024(2) (reasonable person would not believe the signal to stop was given by a police officer). We review the claim of ineffective assistance de novo. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

■■ ¶14 A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The defendant must show both deficient performance and

prejudice to establish ineffective assistance of counsel. *Id.* at 687.

¶15 Deficient performance is representation that falls below an objective standard of reasonableness based on consideration of all the circumstances. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). We begin with a presumption that counsel effectively represented her client. *McFarland*, 127 Wn.2d at 335. So a successful challenge requires a showing that there were no legitimate strategic or tactical reasons for the challenged conduct. *Id.* at 336.

■■ ¶16 Here, the attorney's decision not to request an instruction on the affirmative defense to attempting to elude can properly be characterized as a legitimate strategic or tactical decision. *See, e.g., State v. Hassan*, 151 Wn. App. 209, 218, 211 P.3d 441 (2009) (characterizing a decision to not request a jury instruction as part of a legitimate trial strategy). Mr. Perez testified that he did not realize a police car was following him, nor did he see lights or hear a siren. He argues from this that his counsel's failure to request the affirmative defense instruction allowed the jury to convict him by finding only that the sergeant had signaled and Mr. Perez did not stop. He is mistaken. Conviction required a showing that Mr. Perez acted "willfully." RCW 46.61.024(1). So the jury could have acquitted even without the instruction.

¶17 Mr. Perez cannot then show that his attorney's failure to request the instruction was other than a tactical decision or that he was ultimately prejudiced in any event. With the instruction, Mr. Perez would have had to prove the affirmative defense. *State v. Lively*, 130 Wn.2d 1, 12, 921 P.2d 1035 (1996). But the State had to prove that his conduct was willful beyond a reasonable doubt.

■ ¶18 We would also conclude based on the videotape and the officer's narration of that tape that the State's showing overwhelmingly supported the conclusion that Mr. Perez attempted to elude Sergeant Jones and any error,

even assuming error, was harmless. *State v. Atkins*, 156 Wn. App. 799, 813-14, 236 P.3d 897 (2010).

NEW TRIAL—JUROR MISCONDUCT

¶19 Mr. Perez contends that he is entitled to a new trial because of juror misconduct, misconduct that was not brought to his attention until after the jury had found him guilty. The jury returned its verdict on October 22, 2010. Three days later, the matter came before the court for sentencing and defense counsel reported that one of the jurors failed to disclose that he possibly knew Mr. Perez:

> It came to my attention via phone message left over the weekend, my client Mr. Perez informed me that one of the jurors who sat in his case, [B.B.], in fact is not only acquainted with Mr. Perez but has been a long-time[ ] family friend with Mr. Perez's Sunday school teacher among other things and has a lot of contact with Mr. Perez's family. That was not disclosed when the court asked whether any of those potential jurors knew any of the parties involved.
>
> I believe that the correct course would be for me to – Or perhaps the court, but – to subpoena [B.B.]. My intent is not to have any contact with [B.B.] myself through an investigator or otherwise, but simply to summon him to court so that the court can inquire – we could have a hearing as to what these circumstances are.

Report of Proceedings (RP) (Oct. 25, 2010) at 3-4. The court then responded that the bailiff had brought that information to the court's attention after the first day of trial but that the court had not notified the parties:

> All right. I'll want to make just a brief additional record.
>
> After – After the jury was empaneled, the bailiff mentioned to me that one of the jurors thought that he might be acquainted with Mr. Perez's father, and wasn't sure yet if it was the same family. And so the way I left it with the bailiff is that if the juror says anything further about that let me know, and he did not. So I assume the jury left it there.

It's always a little bit iffy to filter conversations through the bailiff. The bailiff may not be telling me exactly what the juror said, and so on. But that was the – that was the extent of it.

RP (Oct. 25, 2010) at 4. The court summoned the juror to appear for questioning. On November 9, 2010, the juror testified that he did not realize he knew Mr. Perez during voir dire, but then after the first day of trial he realized he may and so informed the bailiff:

Well, when I came in, they referred to Mr. Perez all the time, and then in the trial they started calling him Christopher Perez, and I recognized the name, and his mother was sitting in the audience.

. . . .

When I first saw [Mr. Perez's mother], then it kind of rung a bell, and I went home that night, that was at kind of the close of the day, the first day, and I went home and I said to my wife that I think I'm acquainted with them and we talked about them. So we decided the best thing was to come early the next morning and tell the bailiff, and which I did. And he said that he would take it up with [the judge], and I did not hear anything back. So I figured that you felt that I could render a fair decision.

RP (Nov. 9, 2010) at 6, 13. The juror went on to explain that he was acquainted with the family through church. He did not recognize Mr. Perez because it had been some 20-plus years since he had seen him last. He stated that he knew "a lot of Perezes." RP (Nov. 9, 2010) at 7. He acknowledged that he had read a police report "a long time ago" that involved Mr. Perez but could not remember what it involved. RP (Nov. 9, 2010) at 17-18. The court concluded that there was no prejudice:

Okay. You were not advised. And that's probably my fault. A detail lost during the process. That the bailiff mentioned this to me before we took up on the second day, and most probably – I don't recall specifically – but most probably I set it off to a corner of my mind and didn't address it with you when we took up.

I'm going to assume for the sake of analyzing this that had I brought it to your attention at that time and had we made an inquiry of [B.B.], it would have been at that time identical or similar to what was – what occurred today.

RP (Nov. 9, 2010) at 22-23.

¶20 Mr. Perez moved for a new trial and argued that the juror's failure to disclose his personal acquaintance and knowledge of criminal allegations against Mr. Perez denied him the opportunity to challenge that juror for cause. That same day the court held a sentencing hearing. The court denied the motion for a new trial at that same hearing:

> The record that is before the court establishes that a juror, who I will identify [with] the initials B.B., had some past acquaintance with the defendant's family, that upon commencement of the trial at which Mr. Perez was introduced both by name and by standing and being seen by all the panel, B.B. did not recognize Mr. Perez.
>
> During the trial, when apparently some testimony – or the name of Mr. Perez's family members triggered an association in the juror's mind, the juror brought that past association to the court's attention through the bailiff. And through inadvertence or miscommunication between the court and the bailiff that circumstance was not brought to the attention of trial counsel.
>
> When it did come to the attention of the defense and was raised before the court, the juror was summoned before the court and examined under oath. What B.B. testified to in my view is not subject to uncertainty or criticism or characterization that [defense counsel] would have the court put on it. He seemed to me to be extremely forthright, very straightforward and under no pressure to color his responses.
>
> B.B. was a man of 76 years of age who had retired from 33 years of teaching at Moses Lake High School, at Big Bend Community College and at some point for a couple of years in Idaho. He testified that during voir dire he recognized the name Christopher Perez but when he saw the defendant's face he did not recognize him. He said that – he had some exposure to Mr. Perez when the defendant was of high school age and his appearance both in terms of body size and hair length was

substantially different. And that explained why he didn't recognize Mr. Perez when he was introduced to the panel.

The juror indicated that he and Mr. Perez belonged to the same religious denomination, that that denomination is organized in Moses Lake in what is known as a stake that he estimates has around 3,000 people in it. The stake is divided into smaller groups called wards. There are 250 to 400 people in each ward. And that he and the Perez family were in different wards.

They had contact very infrequently at times when – various wards would combine for some overall event of the church.

B.B. doesn't recall any specific activity involving the defendant. He is amongst the defendant's family most closely acquainted with the defendant's father Cliff and somewhat less so with defendant's mother Vera.

In regard to the defendant's father B.B. say [sic] they're just acquaintances, not in the same ward, friendly with one another whenever they would have combined church gatherings, to the extent of saying hello, greeting, that sort of thing, but never individually socializing.

The witness last saw the older Perezes at dinner two to three months prior.

The – B.B. testified that he recalled never hearing any news regarding the Perez family between the wards of the church. He recalls no news – ever hearing any news regarding the defendant except reading a police report, what he described as a long time ago, and he forgot what it related to.

He said he had heard rumors at some point regarding the defendant being what he described as a black sheep or misbehaving, but he knew nothing of the charge for which Mr. Perez was tried prior to the trial.

He indicated that when he did have infrequent contact with the parents that he did not – that their conversations did not address their children. He recalls never hearing any mention of the defendant no longer being involved in the church or its activities. And he did not recall whether or not he had been at some ancient time the defendant's Sunday school teacher.

The witness testified that once he did make the connection of his past with the defendant, he set it aside, it made no

difference to him as a juror, and he compared nothing in the testimony with his experience of Mr. Perez.

Under these circumstances the court does not find that the juror failed to answer honestly a material question on voir dire because the juror simply didn't know at that time that he had a past acquaintance with the defendant or his family.

And the court also finds that the information that the juror possessed, scanty as it was, did not influence the juror in any way that would justify a new trial.

So that motion is denied and we can proceed to sentencing.

RP (Dec. 6, 2010) at 16-19.

¶21 Mr. Perez has the right to a trial by an impartial jury. That right is guaranteed by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Brett*, 126 Wn.2d 136, 157, 892 P.2d 29 (1995). And so a juror must be excused for cause if "the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). The judge presiding over the trial, the judge who saw and heard the juror, is in the best position to make that judgment, and we therefore review for manifest abuse of discretion. *State v. Gonzales*, 111 Wn. App. 276, 278, 45 P.3d 205 (2002).

¶22 The appropriate inquiry here is, first, whether the information was material and, second, whether it would have provided the basis for a challenge for cause. *State v. Cho*, 108 Wn. App. 315, 321, 30 P.3d 496 (2001). Either actual or implied bias would have provided the necessary grounds for a challenge for cause. *Id.* at 324. And if, but only if, Mr. Perez was entitled to challenge the juror for cause, he was entitled to a new trial. *Id.* at 323. The lost opportunity to exercise a preemptory challenge is not enough. *Id.*

¶23 Grounds for a claim of implied bias are set out in RCW 4.44.180. It provided that a juror's bias may be implied by

(1) Consanguinity or affinity within the fourth degree to either party.

(2) Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to a party; or being a member of the family of, or a partner in business with, or in the employment for wages, of a party, or being surety or bail in the action called for trial, or otherwise, for a party.

(3) Having served as a juror on a previous trial in the same action, or in another action between the same parties for the same cause of action, or in a criminal action by the state against either party, upon substantially the same facts or transaction.

(4) Interest on the part of the juror in the event of the action, or the principal question involved therein, excepting always, the interest of the juror as a member or citizen of the county or municipal corporation.

RCW 4.44.180. Mr. Perez does not meet any of the criteria necessary to imply bias here. Nor can that bias be fairly inferred from this record.

¶24 In *Cho*, the court remanded for further inquiries by counsel and the trial judge on the potential for actual bias. 108 Wn. App. at 329. Here that inquiry has already been made. The juror explained that he was casually acquainted with the family through church. He did not recognize Mr. Perez because it had been some 20-plus years since he had seen him last. He knew "a lot of Perezes." RP (Nov. 9, 2010) at 7. He acknowledged that he had read a police report "a long time ago" that involved Mr. Perez but could not "remember the occasion or what was said – what was in it now." RP (Nov. 9, 2010) at 18. He declared, "I can't really say that I know very much about the actions of Chris at all." RP (Nov. 9, 2010) at 18. When asked if he had ever heard rumors about Mr. Perez being a "black sheep" or getting in trouble, the juror responded, "No." RP (Nov. 9, 2010) at 18.

¶25 There is no showing here that would have supported a challenge for cause. The court did not, then, abuse its discretion by denying Mr. Perez's motion for new trial.

¶26 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

BROWN and SIDDOWAY, JJ., concur.