IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37394-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CRISTIAN LUPASTEAN, | ) | |
| | ) | |
| Petitioner. | ) | |

FEARING, J. — We must decide whether a juror's incomplete and perhaps

misleading answer to a question during voir dire constituted juror misconduct and

whether any misconduct warrants a new trial for petitioner Cristian Lupastean. Unlike

the settings addressed in most other reported decisions, the parties discovered the

incomplete answer at the beginning of trial, and the trial court addressed the potential

juror misconduct. We conclude that the trial court did not abuse its discretion when

refusing to dismiss the juror, and we affirm Lupastean's convictions. The juror did not

intentionally mislead the parties, and the juror held no disqualifying bias.

FACTS

The jury needed to decide whether petitioner Cristian Lupastean or Erika Harvey

drove a truck when Trooper Antonio Olivas spotted the truck on January 27, 2018, at

2:50 p.m., on I-90 in Adams County. Both Harvey and Lupastean then occupied the

truck. Lupastean's father owned the trucking company that owned the truck. Harvey had

a valid commercial driver's license, but Lupastean's license was suspended.

During trial both Erika Harvey and Cristian Lupastean testified that Harvey drove

the truck. Harvey averred that she exited the interstate to use the restroom at a gas station

because she felt sick. She saw the emergency lights of Trooper Antonio Olivas's vehicle

only after she took the exit ramp and brought the truck to a stop near the gas station. She

had not earlier noticed the presented of the law enforcement vehicle.

Trooper Antonio Olivas works for the Washington State Patrol's commercial

vehicle division. At the identified time, Trooper Olivas observed the truck, in which

Erika Harvey and Cristian Lupastean traveled, pass him. Olivas testified that Lupastean,

not Harvey, drove the truck.

Trooper Antonio Olivas decided to stop the truck for a routine inspection, and he

turned on his emergency lights. The vehicle exited the freeway onto a ramp and

continued toward a gas station. Trooper Olivas grew curious as to why the truck did not

2

stop, and he peered into the truck's mirrors to observe the driver. He observed Lupastean and Harvey switch seats, with Harvey assuming the driver's seat. At the time the two switched seats, Olivas estimates that the truck traveled at 10 miles per hour toward gas station fuel pumps fifty yards away. Trooper Olivas testified that a vehicle of that size traveling at ten miles an hour could be dangerous.

PROCEDURE

The State of Washington charged Cristian Lupastean, in district court, with driving while license revoked in the first degree, driving without a commercial license, and reckless driving.

At the beginning of voir dire, the trial judge listed the three charges and read the elements of each charge. He informed the jury that the State charged Cristian Lupastean with driving while having a revoked license in the first degree:

> A person commits the crime of driving while license revoked in the first degree when he or she, having been found by the Department of Licensing, to be a habitual traffic offender, drives a motor vehicle while an Order of Revocation is in effect.

Clerk's Papers (CP) at 45. He then read the elements of the second charge, driving without a commercial driver's license. The trial court declared that a person commits this crime when, "at the time of the driving, he or she does not have a valid commercial driver's license." CP at 46. Finally, the court explained that the third charge for reckless

3

driving occurs when a driver "drives a motor vehicle in willful or wanton disregard for the safety of persons or property." CP at 46.

After listing the charges and their respective elements, the district court asked all members of the venire:

> Have any of you had any personal experience with a similar or related type of case or incident as a victim, witness, or accused?

CP at 49. One potential juror responded affirmatively, and the rest responded in the negative.

The district court next asked:

> Do any of you have a close friend or relative who has had experience with a similar or related type of case or incident? And that would be as a victim, witness, or accused.

CP at 51. Three jurors responded affirmatively. One commented that a brother-in-law was in an accident when the other driver was unlicensed. Another noted that his brother had his driver's license revoked and the brother was arrested for driving while under the influence of alcohol (DUI). The third venire person recounted that a child had received a DUI. The district court noted on the record negative responses from other jurors to the question.

The State questioned venire juror 14 on her ability to evaluate a case based on testimony. Defense counsel exercised all available peremptory challenges. Venire juror number 14 was seated as juror number 6. We hereafter refer to this juror as juror 6.

4

After the district court swore in the jury, the district court ordered a brief recess.

After the recess, defense counsel informed the trial court that the husband of juror 6

approached him and told him that his car had been hit by an unlicensed driver.

According to counsel:

> He [the juror's husband] asked if I was an attorney, and then
> proceeded to ask about an incident that he had been involved in with
> regards to getting hit by an unlicensed driver in an accident, and his wife is
> on the jury.

CP at 84. Counsel explained that the husband wanted to recoup his losses in the accident

with the unlicensed driver. According to defense counsel, he informed the man that he

could not speak with him during the trial.

After the disclosure by defense counsel, the district court summoned juror 6 into

the courtroom for questioning. The following colloquy ensued:

> THE COURT: And it has come to the Court's attention that
> apparently your husband has been involved in an automobile accident?
> JUROR NO. 6: Yeah, this was about a month ago, but it didn't go to
> court or nothing.
> THE COURT: Okay. And as far as that accident, do you think that
> would affect your ability to be fair and impartial in this case?
> JUROR NO. 6: Oh, yeah.
> THE COURT: You think it would affect you?
> JUROR NO. 6: No, it wouldn't affect me. I would be fair.
> THE COURT: Okay. Be a fair juror?
> JUROR NO. 6: No, yeah, I would be fair.
> THE COURT: All right. Any further questions from the State or the
> defense?
> MS. RUSSELL [the State's attorney]: No. Thank you, Your Honor.
> MR. KIRKHAM [defense counsel]: Yes, Your Honor. Ms. Castro,
> what do you know about that accident?

5

JUROR NO. 6: Well, I wasn't with him when it happened.

MR. KIRKHAM: Okay.

JUROR NO. 6: But he was dropping off my grandkids at school, and when he dropped off the last one—I'm just thinking in my head of what he told me—that he was coming home and he was making a left turn and there was an oncoming car and it hit him.

MR. KIRKHAM: Okay. Do you know if the other driver was cited or not?

JUROR NO. 6: The other driver didn't have his driver's license.

MR. KIRKHAM: Okay. And earlier when we had everybody in here the judge was asking some questions, and one of the questions had to do whether you or a family member had been involved in a similar incident that's alleged here, and you didn't answer to that. Is that correct?

JUROR NO. 6: Well, yeah, because I didn't think, you know—since they didn't go to court and he just got a ticket, I don't know, I assumed it would be okay.

MR. KIRKHAM: Okay. That gentleman was charged with driving without a license?

JUROR NO. 6: I don't know what happened to the other gentleman that hit my husband. All I know that he didn't have no driver's license.

MR. KIRKHAM: He didn't have a license?

JUROR NO. 6: He didn't have a driver's license.

MR. KIRKHAM: Okay. And the allegations here are that my client was driving without a license. You understood that, correct?

JUROR NO. 6: Yeah, uh-huh.

MR. KIRKHAM: Do you think that those are two similar incidences?

JUROR NO. 6: He was driving without a license?

MR. KIRKHAM: That's the charge.

JUROR NO. 6: Yeah, they're the same, the same, because the other young—it was a young kid and he was driving without a license, a young kid.

MR. KIRKHAM: Okay.

JUROR NO. 6: So, since they didn't go to court and my husband didn't get a ticket or nothing, I assumed, you know, it would be okay. So, I didn't bring it up to the judge's attention.

MR. KIRKHAM: Right.

JUROR NO. 6: Yeah.

6

MR. KIRKHAM: And I understand why you didn't bring it up. I'm not mad at you or anything.

JUROR NO. 6: Oh, okay.

. . . .

JUROR NO. 6: Well, yeah, when he was asking that question I was thinking behind my head. I go, well, it didn't go to court, my husband didn't get a ticket. I assumed it would be okay, but I thought in my mind.

CP at 85-88.

The prosecuting attorney then asked juror 6 some questions:

MS. RUSSELL: Ms. Castro, it didn't seem similar to you, is that why you didn't raise it with us?

JUROR NO. 6: Yeah, yeah, yeah.

. . . .

JUROR NO. 6: Yeah, yeah, my husband was just involved. It wasn't—they blamed my husband since the kid, the young boy, had the right of way, and they blamed my husband for the accident, you know. And the young kid, it was a young boy, driving without a license, so I figured, you know, the way the situation happened, you know, it wasn't my husband's fault because he had made the turn, it was the other oncoming car that hit him on the side, you know.

MS. RUSSELL: And it didn't involve a truck, or reckless driving, or anything like that?

JUROR NO. 6: No, no, no.

MS. RUSSELL: Okay.

JUROR NO. 6: It was just one of those accidents that happen.

MS. RUSSELL: Thank you.

JUROR NO. 6: So, that's why I didn't bring it up to attention because my husband didn't get no ticket, he didn't even go to court. It's like, well, you know.

MS. RUSSELL: So, you still think you can be fair?

JUROR NO. 6: Oh, yeah. Yeah, that's why I brought it up when I brought it up to the gentleman. I thought, well, I'll be fair, you know.

CP at 89-90.

Defense counsel moved to disqualify juror 6 and for a mistrial. Counsel conceded that he did not believe that the juror deliberately failed to disclose information. Nevertheless, counsel asserted that the juror still failed to correctly answer the court's question regarding family members impacted by unlicensed drivers. No additional juror had been selected as an alternative juror, although the court considered returning a recently excused juror to take juror 6's place. The State registered no objection to summoning a belated alternate, although the State did not deem an alternate necessary.

After a recess, the trial court announced its ruling on the defense's motion to disqualify juror 6 or a new trial. The court found that juror 6 did not deliberately fail to disclose requested information. Defense counsel repeated that he did not allege a deliberate failure to disclose. The trial court declined to disqualify juror 6 because she did not deliberately mislead the parties or the court and she declared her ability to be fair and impartial. The district court also denied a motion for a mistrial.

The jury convicted Cristian Lupastean on all three counts. Lupastean appealed to the Adams County Superior Court. The superior court affirmed. We granted discretionary review of the superior court's decision.

LAW AND ANALYSIS

On appeal, Cristian Lupastean repeats his contention that the district court erred when it failed to excuse juror 6. He contends that the continued seating of juror 6 violated due process of law and his right to a jury trial as stated in the Sixth and

Fourteenth Amendments to the United States Constitution and article I, sections 3, 21, and 22 of the Washington State Constitution. Lupastean again concedes that juror 6 honestly answered the pertinent voir dire question, but argues that the answer was misleading. According to Lupastean, the misleading answer prevented his counsel from inquiring further as to the bias of juror 6 and also prevented him from exercising a peremptory challenge of juror 6. According to Lupastean, the district court should have either declared a mistrial or selected another juror.

Implied and Actual Juror Bias

Although Cristian Lupastean seeks reversal on constitutional grounds, his argument necessitates our listing of the reasons for disqualifying jurors for bias and identifying the difference between actual and implied bias for purposes of juror removal. Lupastean contends juror 6 possessed both actual and implied bias.

A number of Washington statutes address removal of potential jurors for bias. RCW 4.44.170 states:

> Particular causes of challenge are of three kinds:
> (1) For such a bias as when the existence of the facts is ascertained, in judgment of law disqualifies the juror, and which is known in this code as *implied bias*.
> (2) For the existence of a *state of mind* on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this code as *actual bias*.
> (3) For the existence of a defect in the functions or organs of the body which satisfies the court that the challenged person is incapable of

performing the duties of a juror in the particular action without prejudice to the substantial rights of the party challenging.

(Emphasis added.)  RCW 4.44.190 addresses "actual bias:"

A challenge for actual bias may be taken for the cause mentioned in RCW 4.44.170(2).  But on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon what he or she may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially.

RCW 4.44.180 defines "implied bias:"

A challenge for implied bias may be taken for any or all of the following causes, and not otherwise:
(1) Consanguinity or affinity within the fourth degree to either party.
(2) Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to a party; or being a member of the family of, or a partner in business with, or in the employment for wages, of a party, or being surety or bail in the action called for trial, or otherwise, for a party.
(3) Having served as a juror on a previous trial in the same action, or in another action between the same parties for the same cause of action, or in a criminal action by the state against either party, upon substantially the same facts or transaction.
(4) Interest on the part of the juror in the event of the action, or the principal question involved therein, excepting always, the interest of the juror as a member or citizen of the county or municipal corporation.

Cristian Lupastean contends that, because of juror 6's husband's accident with an unlicensed driver, juror 6 had hostility toward Lupastean, an alleged unlicensed driver. Lupastean adds that the juror eventually agreed that the facts underlying the prosecution of Lupastean possessed similarities to her husband's accident in that both involved a

10

purported unlicensed driver. Based on these facts and the juror's concession, Lupastean

contends juror 6 possessed actual bias against him. We disagree.

Actual bias under RCW 4.44.170(2) and RCW 4.44.190 consists of a state of mind

that the juror cannot shed and that prevents a juror from impartially trying a case. Few

similarities arise between juror 6's husband's accident and the driving by Cristian

Lupastean without a license. The trial court and counsel questioned juror 6, after the

husband talked to defense counsel. Based on the questioning, the trial court could

reasonably conclude that juror 6 carried no actual bias against Lupastean. We defer to

the trial court's finding because the trial court is in the best position to observe a juror's

testimony and determine whether he or she may try a case impartially. *State v. Perez*,

166 Wn. App. 55, 67, 269 P.3d 372 (2012).

Under RCW 4.44.180, a juror holds implied bias if related familially to a party,

possesses some economic relationship with a party, served as a juror on a case involving

identical facts, or has an "interest" in the subject matter of the suit. Lupastean contends

the trial court should have dismissed juror 6 under either subsection 2 or 4 of the statute.

Subsection 2 directs excusal of a juror who is the legal client of a party. According to

Lupastean, his defense counsel was a potential attorney for juror 6's husband and,

because Washington is a community property state and the husband wanted payment for

the damage to the couple's car, defense counsel was a potential attorney for the juror.

We observe that any such relationship with defense counsel could create bias in favor of

11

defense counsel and his client, Cristian Lupastean, rather than bias against Lupastean.

Nevertheless, RCW 4.44.180(2) demands removal only if the juror's attorney is a party, not if the juror's attorney is an attorney for a party in the lawsuit. Also, juror 6's husband never hired defense counsel, so no attorney-client relationship developed. Defense counsel immediately ended any discussion of the husband's potential case.

Cristian Lupastean may contend that juror 6 possessed an "interest" in the subject matter of the prosecution because the juror and her husband sought recovery for damages against an unlicensed driver. Nevertheless, the "interest" mentioned in RCW 4.44.180(4) means a direct pecuniary interest in the subject matter of the pending case or in the financial condition of a party. *Dean v. Group Health Cooperative of Puget Sound*, 62 Wn. App. 829, 835-36, 816 P.2d 757 (1991). Juror 6 possessed no interest in the economic wellbeing or harm of Lupastean or in a successful prosecution of Lupastean.

Because a great variety of fact patterns can arise, a trial court possesses a measure of discretion in determining what constitutes an "interest" within the meaning of RCW 4.44.180(4), and its ruling should not be disturbed on appeal absent abuse of that discretion. S*tate v. Rupe*, 108 Wn.2d 734, 748, 743 P.2d 210 (1987); *Carle v. McChord Credit Union*, 65 Wn. App. 93, 108, 827 P.2d 1070 (1992). The trial court did not err when denying removal of juror 6 because of an alleged interest in the subject matter of the prosecution.

12

Constitutional Right to Fair Jury

We move to our constitutional analysis. Under both the United States and Washington State Constitutions, the right to trial by jury must be preserved and remain inviolate. *State v. Boiko*, 138 Wn. App. 256, 260, 156 P.3d 934 (2007); U.S. CONST. amend. VI; CONST. art. I, § 21. The right to trial by jury requires a trial by an unbiased and unprejudiced jury and one free from juror misconduct. *State v. Boiko*, 138 Wn. App. at 260. A juror's failure to speak during voir dire regarding a material fact can amount to juror misconduct. *In re Detention of Broten*, 130 Wn. App. 326, 337, 122 P.3d 942 (2005).

Cristian Lupastean rests his appeal on purported misconduct of juror 6 when failing to disclose her husband's recent accident with an unlicensed driver. We must address whether juror 6 engaged in misconduct and, if so, whether Lupastean must show prejudice resulting from the misconduct. In doing so, we must discern whether juror 6 provided a false, misleading, or incomplete answer and her state of mind when answering. We must also discern whether, assuming juror 6 gave an inappropriate answer, Lupastean must show some form of underlying bias, and, if so, actual bias or implied bias. Our previous conclusion that juror 6 suffered no disqualifying bias creates an obstacle to Cristian Lupastean's success on his constitutional argument.

13

The law about inaccurate answers during voir dire is discombobulated and lacks any unifying and comprehensive rule. The scattered condition of the law renders an organized analysis difficult and prolongs this opinion.

McDonough Two-Part Test

*McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984), remains the nation's leading decision with regard to alleged juror misconduct when incompletely or inaccurately answering a question during voir dire. Although the decision arose from a civil trial, criminal courts apply the same test emanating from the decision. Few states have diverged from the United States Supreme Court decision when applying state constitutional provisions. Washington State follows United States Supreme Court precedent.

In *McDonough Power Equipment, Inc. v. Greenwood*, Billy Greenwood brought a products liability lawsuit against McDonough Power Equipment for injuries sustained when his feet struck a lawnmower blade. During voir dire, the district court questioned members of the venire:

> "Now, how many of you have yourself or any members of your immediate family sustained any severe injury, not necessarily as severe as Billy, but sustained any injuries whether it was an accident at home, or on the farm or at work that resulted in any disability or prolonged pain and suffering, that is you or any members of your immediate family?"

*McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. at 550. Venire juror Ronald Payton did not respond. After a three-week trial and a jury verdict in favor of the

14

manufacturer, Greenwood learned that juror Payton failed to disclose that his son had sustained a leg injury from a tire explosion. The juror did not believe that his son's injury resulted in a "disability or prolonged pain and suffering." Greenwood moved for a new trial, which the district court denied.

On appeal, in *McDonough Power Equipment, Inc. v. Greenwood*, the Tenth Circuit reversed and ordered a new trial on the basis that Ronald Payton failed to respond affirmatively to the district court's inquiry. The circuit Court of Appeals reasoned that the juror's failure to disclose his son's injury prejudiced Greenwood and impacted his right to raise a peremptory challenge.

The United States Supreme Court, in a fractured opinion, reversed the appeals court in *McDonough Power Equipment, Inc. v. Greenwood*. Since then, state courts and lower federal courts have struggled to discern the holding in *McDonough Power Equipment, Inc.* In the lead opinion, then Associate Justice Rehnquist wrote for himself and three other members of the court that "respondents are not entitled to a new trial unless the juror's failure to disclose denied respondents their right to an impartial jury." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. at 549. Justice Rehnquist based his opinion on Federal Rule Civil Procedure 61, which reads that a district court order should not be set aside or a new trial granted unless a defect within that order renders the denial of such action inconsistent with substantial justice. Justice Rehnquist

15

announced a two-part test to determine whether a juror's failure to answer a question during voir dire deprives a party of the right to a fair trial:

> We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. at 556. Under the lead opinion, the defendant must show that the juror lied and a correct answer would have established disqualification based on bias.

In Justice Blackmun's concurring opinion, in which two other justices joined, he agreed that "the honesty or dishonesty of a juror's response is the best indicator of whether the juror in fact was impartial." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. at 556 (Blackmun, J. concurring). Nevertheless, he stated:

> I write separately to state that I understand the Court's holding not to foreclose the normal avenue of relief available to a party who is asserting that he did not have the benefit of an impartial jury. Thus, regardless of whether a juror's answer is honest or dishonest, it remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to be inferred.

*McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. at 556-57 (Blackmun, J. concurring). According to Justice Blackmum, a finding that the juror lied is not essential to demonstrating bias and gaining a new trial.

16

Justice Brennan, joined by Justice Marshall, concurred in the judgment only.

Justice Brennan agreed with the lead opinion that a juror's failure to provide a complete

answer would not always warrant a new trial. He considered honesty only a factor in

determining whether a juror is biased:

> In my view, the proper focus when ruling on a motion for new trial
> in this situation should be on the bias of the juror and the resulting
> prejudice to the litigant. More specifically, to be awarded a new trial, a
> litigant should be required to demonstrate that the juror incorrectly
> responded to a material question on *voir dire*, and that, under the facts and
> circumstances surrounding the particular case, the juror was biased against
> the moving litigant.

*McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. at 557-58 (Brennan, J.

concurring). Justice Brennan's views may echo Justice Blackmun's decision rather than

generating a third test.

Cristian Lupastean contends that the two-part test promoted by Justice Rehnquist

in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984) is not the

exclusive test for determining whether to grant a new trial based on alleged juror

misconduct. In turn, Lupastean argues that intentional concealment and disqualifying

juror bias are not always required to obtain a new trial. In so arguing, Lupastean

contends other federal decisions modify the two-part test, Washington decisions modify

the test, and the two-part test's interference in his right to exercise peremptory challenges

should lead this court to modify the test. We address these arguments in such order.

Other Federal Decisions

Cristian Lupastean relies on *Williams v. Taylor*, 529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000) and *Porter v. Zook*, 898 F.3d 408 (4th Cir. 2018) in support of his position that a court's consideration of whether to grant a new trial is not limited to the *McDonough* test. Further, he insists that federal courts have indicated that Justice Rehnquist's reference to "honesty" should encompass misleading answers regardless of the intent of the juror.

In *Williams v. Taylor*, 529 U.S. 420 (2000), the United States Supreme Court considered whether to grant state prisoner Michael Wayne Williams' petition for federal habeas corpus relief in the form of an evidentiary hearing on a claim of juror bias. The district court asked whether jurors were related to any prospective witnesses or whether they were ever represented by counsel for either of the parties. Venire juror Bonnie Stinnett indicated a no response, and she later sat on the jury that convicted Williams. Williams later learned that Stinnett, although now divorced, had a seventeen-year marriage with the sheriff deputy who investigated the scene of the crime, interrogated an accomplice in the case, and became the prosecution's first witness. The prosecuting attorney also formerly represented Stinnett in the divorce case. Stinnett explained she remained silent to the voir dire question because she was no longer related to the sheriff deputy, and she believed the prosecuting attorney represented neither her husband nor her during the divorce proceeding as neither party contested the divorce.

18

The United States Supreme Court, in *Williams v. Taylor*, determined that the juror's silence in response to questions on voir dire was misleading. With regard to the first question, although not technically related, "her silence after the first question was asked could suggest to the finder of fact an unwillingness to be forthcoming; this in turn could bear on the veracity of her explanation for not disclosing that Woodson had been her attorney." *Williams v. Taylor*, 529 U.S. at 441. With regard to the second question, the Court concluded that Stinnett failed to disclose material information and her failure to disclose the information was "misleading as a matter of fact." *Williams v. Taylor*, 529 U.S. at 442. The U.S. Supreme Court found that an evidentiary hearing should be held for Williams to expose Stinnett's potential bias.

The unanimous decision in *Williams v. Taylor* suggests that, under some circumstances, the challenger to the jury verdict need not show that the juror intentionally lied when answering a voir dire question. The *Williams* Court never mentioned *McDonough Power Equipment, Inc. v. Greenwood*.

In *Porter v. Zook*, 898 F.3d 408 (4th Cir. 2018), a capital murder case, a jury convicted Thomas Porter of killing law enforcement officer Stanley Reaves. In a federal habeas petition, Porter raised theories of juror bias based on actual bias and a juror's failure to disclose under *McDonough Power Equipment, Inc. v. Greenwood*. Defense counsel asked members of the jury if a family member had ever worked as a law enforcement employee. In response, juror Bruce Treakle disclosed that his nephew

19

worked as a police officer. He stated that the relationship would not affect his ability to be impartial. After the verdict, the juror revealed that he found testimony from Reaves' wife emotional because he had a brother who worked in law enforcement. The brother worked as a deputy sheriff in the jurisdiction adjacent to where the crime occurred.

In *Porter v. Zook*, the Fourth Circuit concluded that *McDonough Power Equipment, Inc. v. Greenwood* and *Williams v. Taylor* presented two distinct tests for a new trial based on a juror's answer to questioning. The court suggested that *Williams v. Taylor* applied to a prosecution when the juror held actual bias; whereas, *McDonough Power Equipment, Inc. v. Greenwood* applied in instances of alleged implied bias. If the accused claims implied bias, the accused must show juror misconduct under *McDonough*. In an actual bias claim, the accused could succeed regardless of whether the juror intentionally lied. Despite so analyzing *Williams* and *McDonough*, the court stretched the coverage of *McDonough*'s analysis of implied bias to something more than intentional lying.

The court, in *Porter v. Zook*, first addressed the actual bias claim stating the juror not only failed to disclose that his brother worked in law enforcement, but also informed counsel that he found witness testimony emotional and had sympathy for law enforcement because his brother worked as a law enforcement officer. The Fourth Circuit held that an evidentiary hearing should be held on the claim of actual bias.

The Fourth Circuit, in *Porter v. Zook*, next addressed the *McDonough* claim. The circuit court of appeals held that the lower courts failed to reasonably apply *McDonough* when they concluded that the juror responded honestly. The lower court reasoned that the juror acknowledged that he had a nephew in law enforcement and that he simply was not asked if he had additional relationships to law enforcement officers. The court of appeals stated: "[We] have viewed the 'honesty' aspect of the first *McDonough* prong as encompassing not just straight lies, but also failures to disclose." *Porter v. Zook*, 898 F.3d at 431. The court ordered an evidentiary hearing in order to determine whether further follow up questions stemming from a correct answer, that the juror's brother worked in law enforcement, would provide a basis for a challenge for cause.

We have written at length considering United States Supreme Court jurisprudence because of the many arguments forwarded by Cristian Lupastean and the slim distinctions posited by Lupastean when advocating for a new trial and because we wish to show that we analyzed the arguments and distinctions. Nevertheless, under either the *McDonough Power Equipment, Inc. v. Greenwood* rule or the *Williams v. Taylor* rule, Lupastean's appeal fails. Under *McDonough Power Equipment, Inc. v. Greenwood*, juror 6 did not intentionally lie, and the juror held no implied bias. Any failure to disclose by juror 6 lacks the egregious nature of the juror's misleading comments in *Porter v. Zook*.

Under *Williams v. Taylor*, juror 6 may have failed to fully disclose facts or provided an unintentionally misleading answer. But, the juror possessed no actual bias as

found by the trial court. Unlike in the reported decisions, the error was caught immediately after selection of the jury, and the trial court and counsel questioned the juror concerning her response and her potential bias. Juror 6 eventually made a full disclosure and that disclosure did not supply a valid basis for a challenge for cause.

## Washington Decisions

In attempt to convince this court to reject the teachings of *McDonough Power Equipment, Inc. v. Greenwood* and to expand the circumstances under which the accused can gain a new trial, Cristian Lupastean cites numerous Washington decisions. We discuss at length his principal cited decision, *State v. Boiko*, 138 Wn. App. 256 (2007), and briefly mention other cited opinions. We conclude that Washington decisions do not assist Lupastean.

In *State v. Boiko*, this court described the *McDonough* test as requiring a party to show that (1) the juror intentionally failed to answer a material question, and (2) a truthful disclosure would have provided a valid basis for a challenge for cause. This court then acknowledged that the majority opinion in *McDonough* was written by concurring Justice Blackmun, not the lead opinion of Justice Rehnquist. This court stated that, instead of establishing intentional concealment, when a juror's responses on voir dire do not demonstrate actual bias, in exceptional cases the courts will draw a conclusive presumption of implied bias from the juror's factual circumstances.

22

In *State v. Boiko*, this court affirmed the trial court's decision that implied bias existed as a matter of law. After entry of the verdict, the defense learned that juror 31 was married to a key prosecution witness. She also applied for a job with the prosecutor a year earlier, and she was involved in ongoing litigation with prosecuting counsel in a separate case. Juror 31 disclosed some facts in her juror questionnaire which should have encouraged further questioning from either party's counsel. Nevertheless, during voir dire, no one inquired, and juror 31 did not volunteer that she was married to a witness for the prosecution. The trial court concluded that she had not failed to make material disclosures, although she could have volunteered more information. The trial court did not apply the *McDonough* test. Instead, it concluded juror 31's relationship with a key witness demonstrated implied bias as a matter of law. The trial court granted Boiko a new trial.

In *State v. Boiko*, this court affirmed the trial court's holding. This court wrote:

> The peculiarities arising in this situation were numerous, complex, and fairly considered by the trial court implying bias and ordering a new trial. The nature of juror 31's marital circumstances could inject any number of positive or negative emotions from the juror, whether conscious or not, that may manifest in supportive or obstructive reactions.

*State v. Boiko*, 138 Wn. App. at 264.

*State v. Boiko* stands for the proposition that an accused may gain a new trial in exceptional circumstances. Nevertheless, the trial court found implied bias as a matter of law and this court affirmed the finding. Lupastean does not advocate his case as

exceptional. He concedes he does not show implied bias under the terms of

RCW 4.44.180. He asks this court to extend a reading of RCW 4.44.180(2) to encompass

the alleged bias held by juror 6. We decline this request particularly since the trial court

found that juror 6 did not answer dishonestly. We also decline the request because the

majority of Washington court of appeals' decisions employ the *McDonough* two-part test

outlined by Justice Rehnquist without any modifications or stretching of the test's

elements, when considering whether to grant a new trial based on alleged juror

misconduct. *State v. Cho*, 108 Wn. App. 315, 321, 30 P.3d 496 (2001); *State v. Briggs*,

55 Wn. App. 44, 52-53, 776 P.2d 1347 (1989); *State v. Carlson*, 61 Wn. App. 865, 878,

812 P.2d 536 (1991); *Hill v. GTE Directories Sales Corp.*, 71 Wn. App. 132, 141, 856

P.2d 746 (1993); *State v. Tigano*, 63 Wn. App. 336, 342, 818 P.2d 1369 (1991).

Our high court has ruled that any misleading or false answers during voir dire

require reversal only if accurate answers would have provided grounds for a challenge for

cause. *In re Personal Restraint of Lord*, 123 Wn.2d 296, 313, 868 P.2d 835 (1994).

When a juror fails to disclose information during voir dire, a new trial is warranted when

the information withheld is material and a truthful response would have provided a basis

for challenge for cause. *State v. Carlson*, 61 Wn. App. 865, 878 (1991).

We deem a Washington Supreme Court decision, *In re Personal Restraint of*

*Elmore*, 162 Wn.2d 236, 266-269, 172 P.3d 335 (2007), not *State v. Boiko*, controlling.

The Supreme Court considered the personal restraint petition of Clark Elmore. Elmore

24

challenged his conviction for aggravated first degree murder and rape of his stepdaughter. He argued that he deserved a new trial based on a juror's failure to disclose two incidents, during which another boy touched him sexually.

In *In re Personal Restraint of Elmore*, Juror number 12 answered "no" to two inquiries on his juror questionnaire. The first question asked whether he or friends or relatives had been the victim of a crime, whether or not reported. The second question queried whether he or friends or relatives were the victim of a sexual offense. After the jury read its verdict, defense investigators questioned the juror and he disclosed that he had been sexually molested as a child. He insisted, however, that he had not recalled the incidents until questioned and he believed that neither incident constituted illegal conduct. In evaluating whether to grant a new trial, the state high court relied on the test outlined in *McDonough*. The court stated that the first obstacle faced by Clark Elmore was showing that the juror's late disclosed answer was material. The court observed that both incidents were minor and differed significantly from the murder and rape charges in the case before it. "Thus, even assuming that Juror 12 had disclosed the two prior incidents, given the minimal nature of the sexual contact Elmore cannot demonstrate that the answers would have supported a challenge for cause as required by *McDonough*." *In re Personal Restraint of Elmore*, 162 Wn.2d at 269 (2007). The *Elmore* factual background holds more similarities to Cristian Lupastean's appeal than does the background in *State v. Boiko*.

25

Peremptory Challenge

In his appeal, Cristian Lupastean astutely emphasizes that juror 6's failure to disclose information precluded him from making an intelligent peremptory challenge. By the time the juror's full disclosure occurred, Lupastean had already exercised all of his peremptories. He correctly observes that a party may use a peremptory challenge to exclude a juror for reasons that do not rise to the level of bias. *State v. Briggs*, 55 Wn. App. 44, 51 (1989).

Historically, Washington case law permitted a party a new trial if he or she was foreclosed from exercising peremptory challenges. *State v. Simmons*, 59 Wn.2d 381, 392, 368 P.2d 378 (1962). In *State v. Simmons*, the Washington State Supreme Court stated:

> Where a person serves on a jury who, if not excused for cause, would certainly have been peremptorily challenged if certain questions on *voir dire* had been answered truthfully, it was [sic] been held to be an abuse of discretion not to grant a new trial.

*State v. Simmons*, 59 Wn.2d at 392.

Cristian Lupastean relies on *Robinson v. Safeway Stores*, *Inc.*, 113 Wn.2d 154, 776 P.2d 676 (1989). Plaintiff Marie Robinson, a California resident, was concerned about bias from Washington jurors. Her counsel questioned potential jurors about their ability to be fair to a Californian resident. The future jury foreman responded that the fact that the plaintiff was from California would not affect his ability to be fair. He acknowledged

involvement in a divorce lawsuit, however, he did not disclose involvement in any other case. During deliberations, the foreman asserted that Californians like to sue and do so all the time. After the verdict, he disclosed that he was a defendant in a lawsuit involving a car accident brought by a Californian. The state Supreme Court affirmed the trial court's granting of a new trial, reasoning:

> A juror's misrepresentation or failure to speak when called upon during voir dire regarding a material fact constitutes an irregularity affecting substantial rights of the parties. When the failure to respond in voir dire relates to a material question, the appropriate remedy is to grant a new trial.

*Robinson v. Safeway Stores*, *Inc.*, 113 Wn.2d at 159.

Although the Washington Supreme Court decided *Robinson* after *McDonough Power Equipment, Inc. v. Greenwood*, this state's high court did not mention the United States Supreme Court decision. The Washington Supreme Court acknowledged that, in addition to the concealing or misrepresenting of bias by a juror, a party has the right to be free from juror conduct that precludes her from intelligently using a peremptory challenge. The court wrote:

> [A] false answer on a material matter, whether it relates to the prospective juror's bias and prejudice or whether it relates to other material matters, lures the litigant into a false sense of security, discourages further inquiry, and deprives a litigant of a fair, intelligent and adequate opportunity to challenge the juror . . . The jury a litigant accepts on the basis of misleading information on which he has a right to rely is not the constitutional jury to which he is entitled. The only remedy that will obviate the harm done to his right of trial by jury is to grant a new trial.

27

*Robinson v. Safeway Stores*, *Inc.*, 113 Wn.2d at 160 (quoting *Smith v. Kent*, 11 Wn. App. 439, 445, 523 P.2d 446 (1974)).

Unfortunately for Cristian Lupastean, his appeal comes twenty-five years too late. The state Supreme Court discussed the proper standard for obtaining a new trial again under the circumstances of being precluded to exercise a peremptory challenge, even if briefly, in *In re Personal Restraint of Lord*, 123 Wn.2d 296 (1994). The Supreme Court returned to application of the full *McDonough* two-part test.

In *In re Personal Restraint of Lord*, juror Manuel Rosario denied having heard anything about the crime charged in both his juror questionnaire and again during individual voir dire. After the entry of a guilty verdict, Rosario disclosed to an investigator that he earlier read about the crime in a newspaper. He insisted, however, that he lacked extensive knowledge of the case and he had formed no opinions. The state Supreme Court noted that Rosario gave no indication that he used his previously obtained knowledge during jury deliberations. Any misleading or false answers during voir dire required reversal only if accurate answers would have provided grounds for a challenge for cause. The high court held that the little knowledge held by Rosario would not support a challenge for cause.

Cristian Lupastean perspicaciously observes that the *Lord* court did not overrule *Robinson v. Safeway Stores*, *Inc.* The *Lord* decision did not even mention *Robinson v.*

28

*Safeway Stores*. Also, Lupastean notes that the *Lord* decision came in the context of a personal restraint petition, when the accused faces higher standards of review.

We note the anomaly created by *In re Personal Restraint of Lord*'s failure to mention *Robinson v. Safeway Stores*. Nevertheless, we follow this court's long line of decisions that declare that *Lord* requires a court to apply the two-part test from *McDonough Power Equipment, Inc. v. Greenwood*. The Supreme Court, assuming it earlier had abandoned the two-part test, reinstated the test in *In re Personal Restraint of Lord*. This court no longer considers the loss of the intelligent use of a peremptory challenge as a basis for a new trial. *State v. Perez*, 166 Wn. App. 55, 67 (2012); *State v. Cho*, 108 Wn. App. 315, 321 (2001).

Although we reject the argument based on precedent, we value Cristian Lupastean's contention that an accused should benefit from full disclosure by all jurors before the accused exercises peremptory challenges. We would welcome Supreme Court review of this contention.

### CONCLUSION

Under current precedent, we hold that Cristian Lupastean's right to a fair and impartial jury was not violated. We affirm his three convictions.

No. 37394-1-III
*State v. Lupastean*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:


_____
Lawrence-Berrey, J.

_____
Staab, J.